Plaintiff-appellant Oscar Carter appeals from the amount of damages awarded by the trial court in his suit against defendants-appellees New Buckeye Redevelopment Corp. and the Buckeye Area Development Corp. This case was previously heard by this court, see Carter v. New BuckeyeRedevelop. Corp. (April 2, 1998), Cuyahoga App. No. 72501, unreported.
In Carter, supra, this court reversed and remanded the case finding that the trial court improperly granted the appellees' Civ.R. 41(B)(2) motion to dismiss after the presentation of the appellant's evidence. The issues before the court which are pertinent to the present appeal were whether or not a contract existed and whether or not the appellees breached the contract.
In the previous case, this court set forth the following facts:
 Buckeye Area Development Corporation ("BADC") is a not for profit corporation. New Buckeye Redevelopment Corporation ("New Buckeye") is a wholly owned subsidiary of BADC, which purchased and managed real estate for BADC. Oscar Carter served on the board of trustees of BADC.
 BADC became interested in purchasing the Laudis Building, located at 11902 Buckeye Road. Carter and his wife, Tandrea Carter, purchased this property in 1983.
 The minutes of the June 23, 1993 BADC board meeting state: BADC planned to obtain financing in part from a loan from Society Bank. The board approved the project, "subject to receipt of an appraisal of the property which supports the purchase price of the property, as is." The minutes further state that Carter was present at the meeting, but did not participate in the vote. David Bailey of BADC testified that the board of trustees had authorized the project to go forward, subject to an appraisal.
 The next day, June 24, 1993, a document entitled, "Offer to Buy Real Estate and Acceptance" was signed by Carter and signed on behalf of New Buckeye by Skip Sipos. Skip Sipos was the secretary of New Buckeye and BADC, and executive director of BADC. Sipos testified that he was authorized to sign purchase agreements on behalf of New Buckeye. David Bailey, Chairman of the Board of BADC and Vice President of New Buckeye, testified that Sipos had the authority to sign purchase agreements. The June 24 agreement was written by New Buckeye's attorney.
 The "Offer to Buy Real Estate and Acceptance" provided that New Buckeye agreed to buy and Carter agreed to sell the Laudis building for $97,500. The Buyer's offer would be open for acceptance by the seller until June 30, 1993. Seller was required to furnish marketable title by June 30, 1993, but would have thirty days after receipt of notice to remove title defects. The document stated the following concerning the condition of the premises:
 4. . . . upon Buyer's completion of its warranties and covenants, Seller shall deposit into escrow its certification that Buyer has completed all required repairs, improvements and significant improvements to the Property as required as part of the Purchase Price.
. . .
 8. CONDITION OF THE PROPERTY: Seller warrants that the Property is being sold "AS IS" . . . Buyer understands that all code violations, current and future, become its sole responsibility upon the signing of this contract.
 The document further provided that title shall transfer by recording the deed on or before July 30, 1993, unless the parties agreed otherwise. The "Offer to Buy . . ." contained an integration clause, which stated:
 This Agreement constitutes the entire agreement between the parties.
 The document did not state that the agreement was contingent upon approval by the board of directors, or upon obtaining an appraisal. The document stated that the property was not subject to any encumbrances, although in fact, there were three mortgages on the property.
 The parties agreed to a two week extension of the closing date, until July 13, 1993, to allow New Buckeye to obtain a loan. New Buckeye never obtained a loan.
 Sometime in August, 1993, New Buckeye sent Carter a document entitled "First Modification and Extension of Offer to Buy Real Estate and Acceptance". This document purported to modify the terms of the June 24, 1993 document by: (1) extending the closing date to October 30, 1993, (2) making the purchase of the property contingent upon Buyer's lender's acceptance of an environmental audit, (3) making the purchase contingent upon an appraisal of the property to support the purchase price; and other modifications. Carter refused to sign the modification.
 An environmental audit revealed the presence of heating oil tanks buried beneath the building. As a result of this audit, Society Bank turned down the loan. In a letter dated September 25, 1993, New Buckeye stated that it withdrew its offer to extend the closing date for acquisition of the property.
 Carter never attempted to tender a marketable deed. On May 30, 1993, Tandrea Carter executed a quitclaim deed, quitclaiming her interest in the property to appellant-Carter. The quitclaim deed was not filed until March 3, 1994. No appraisal of the value of the property ever took place.
 In December of 1993, Carter reported to the City of Cleveland that one of his tenants was selling drugs. As a result, the City gave Carter a notice of building code violations, and a notice that the City was going to board up the property. New Buckeye had not done anything to remedy the housing code violations. The Cleveland Municipal Court granted a restraining order to prevent the property from being boarded up.
 All of the tenants left the building by March, 1994. Carter decided not to replace the tenants, because Carter could not afford the $15,000 plus needed to remedy the code violations.
 Society Bank filed a foreclosure action on the building, because Carter stopped making the mortgage payments. Carter admitted he had the financial means to make monthly mortgage payments, but not to pay off the entire mortgage debt. The property was sold for $20,000 at a Sheriff's auction in April, 1995.
Based on these facts, this court essentially held that the parties had entered into a contract for the sale of the building and that this agreement was breached by the appellees.
Upon remand, a trial to the bench was had on the issue of damages only. In its findings of fact and conclusions of law, the trial court reiterated that there was a contract for the sale of the building for the sum of $97,500 and that the appellant received $20,000 after the Sheriff's sale in April 1995. The contract for the sale of the building was drafted by counsel for the appellees and contained no financing contingency provision. The appellees bore the risk of any damage or destruction to the property both prior to and subsequent to the date of transfer of title. The appellees were responsible for all current and future code violations upon the signing of the contract. There was no provision that the contract was contingent on the approval of the appellees' board.
Citing to the appellees' trial exhibit C, the trial court found that by July 29, 1993, the appellant was aware that the appellees were not going to perform under the contract. The court found that: 1) the appellant failed to list the property with any real estate firm and failed to advertise the property for sale even though he claimed to be looking for a new purchaser; 2) the appellant never introduced evidence concerning specific code violations and corresponding cost of repairs; 3) a lack of credible proof of loss of credit rating directly and proximately related by the breach of contract in this case; 4) no evidence as to the alleged loss of reputation in the community; 5) no credible evidence regarding emotional anguish; 6) no preponderance of the evidence that any attorney fees incurred by the appellant because there was no testimony as to number of hours worked or testimony as to what work was performed; and, 7) the appellant did little, if anything, to keep the property from going to foreclosure. The court also noted that the appellant collected $11,415.00 in rent, but that there was no specific correlation to individual tenants and dates the apartments were vacated. It was the appellant who ordered the tenants to vacate the property.
The court held that the appellant failed to mitigate his damages and concluded:
 The court finds that on the paucity of the evidence regarding the damages, that the contract price being $97,500, less the Sheriff's sale of $20,000, less $11,415.00 (only figure given for rents, but the Court believes this is not a full accounting for same) equals a judgment for [appellant] for the breach of the contract in the amount of $66,085.00. The Court further finds that [appellant] is 50% at fault for failure to mitigate his damages. Therefore, the Court reduces the $66,085.00 by half, and awards the [appellant] a net judgment of $33,052.50.
The appellant sets forth five assignments of error. In each assignment of error, the appellant essentially asserts that the trial court erred assessing the manifest weight of the evidence. The Supreme Court has held that the law in Ohio is clear that an appellate court will not disturb the findings of the trier of fact unless they are against the manifest weight of the evidence. Landis v. Kelly (1875), 27 Ohio St. 567; State,ex rel. Shady Acres Nursing Home, Inc. v. Rhodes (1983), 7 Ohio St.3d 7. Moreover, if the judgment of the trial court is supported by some competent, credible evidence, it will not be reversed by a reviewing court as being against the manifest weight of the evidence. C.E. MorrisCo. v. Foley Construction Co. (1978), 54 Ohio St.2d 279. Every reasonable presumption must be made in favor of the judgment and the findings of fact. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77. If the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment.White v. Euclid Square Mall (1995), 107 Ohio App.3d 536.
The appellant's first assignment of error:
 THE TRIAL COURT ERRED IN PLACING THE BURDEN OF PROOF ON APPELLANT TO SHOW MITIGATION OF DAMAGES AND IN RULING THAT THE APPELLANT FAILED TO MITIGATE DAMAGES.
The appellant asserts that the trial court improperly placed upon him the burden of proof on the issue of mitigation.[1] Notwithstanding this argument, the appellant asserts that he did indeed prove that he mitigated his damages by first attempting to salvage the deal and when that was to no avail, by seeking loans on his own behalf to renovate the building. The appellant argues that, contrary to the trial court's opinion, listing the property for sale was not the only means of mitigation.
The appellant also asserts under this assignment of error that the trial court erred in failing to award damages for his expenditures in attempting to comply with code requirements. The appellant points out that he did indeed ask the tenants to leave because the City of Cleveland was threatening to board up the building based on the housing violations. The responsibility for these violations was assumed by the appellees in the contract. Further, the appellant asserts that there was unrebutted evidence as to $15,000 in code violations which the appellees failed to correct.
The appellees assert that it was clear during the trial that mitigation was an issue. The evidence at trial indicated that the appellant did not attempt to sell the property, did not maintain the property, did not pay the mortgage, and did not defend against the foreclosure.
The failure to mitigate damages is an affirmative defense in Ohio.Young v. Frank's Nursery Crafts, Inc. (1991), 58 Ohio St.3d 242, 244. The burden of proving a failure to mitigate damages lies with the party asserting the defense. Hines v. Riley (1998), 129 Ohio App.3d 379. It has been held that reasonable efforts must be made to mitigate damages, not extraordinary efforts. Id. Where the court determines that the nonbreaching party has failed to mitigate and has placed the burden on the nonbreaching party, the court errs as a matter of law. Hines, supra.
In the case sub judice, the language of the trial court's order does not specify who bore the burden of proof, but does indicate that the appellant failed to adequately mitigate damages. Thus, the court did not err in shifting the burden to the appellant, rather the court based its decision on the evidence before it. That evidence consisted of the appellant's testimony, a few documents and letters, and the testimony of David Bailey, the chairperson of the board of trustees of the BADC. Specifically, the appellant testified that he had no use for the property and that he wanted to sell it. However, he also testified that he did not list the property with an agent and did not place a for sale sign on the property.
The court found a paucity of evidence to support a damages award in general and seemed particularly distressed that the appellant failed to list the property with a real estate agent. While there is evidence that the appellant mitigated his damages by trying to salvage the deal with the appellees and, in the alternative, attempted to obtain financing for the renovations himself, the court obviously found these steps insufficient under the circumstances. This is especially so given the appellant's conflicting testimony regarding his desire to sell, but then failing to make any efforts to make his desires known to the public. The court noted in its findings of fact and conclusions of law that the appellant knew as of July 29, 1993, that the appellees were not going to perform the contract. This court cannot say that the trial court was incorrect in its assessment regarding the steps the appellant should have taken to mitigate damages.
When considering the issue of the expenditures made by the appellant to bring the building up to code, this court notes, as did the trial court, that the appellant presented no specific evidence of the code violations,i.e., citations from the city or a copy of the code itself. The appellant failed to clearly testify as to what expenditures were made for specific code violations. However, the appellant did present some documentary evidence. The appellant submitted a bill and canceled checks to All City for $26.40; a Sears credit card purchase of $65.60 for light bulbs, batteries, a smoke alarm, etc.; canceled checks to Willey Germany for plumbing for the total sum of $375.00; a canceled check to John's Electric for $85.00; and a hand-written receipt for $450.00 for work done on the furnace; a canceled check to the Plain Dealer for $59.86.
The appellant testified as to a receipt (not completely legible) from Mr. Rome for $145.00 for replacement lock on the basement door, but this expense was not related to a code violation (T. 104). There is a receipt for a railway repair for the sum of $83.00. The Plain Dealer expense was related to advertising for tenants to lease the premises. The appellant also testified that the copies of parking receipts were related to the operation of the building (T. 109). The appellant testified that he was not presenting as evidence the invoices to support the canceled checks. The appellant also presented an illegible receipt from Ohio Legal Blank from a date prior to this incident, a receipt from Kinkos, and a receipt with no identification at all.
The difficulty the trial court had in sorting this information is understandable. Nonetheless, the appellant presented documentary evidence as to necessary repairs to the building which were the responsibility of the appellees under the contract. The canceled checks to the Plain Dealer, to Mr. Germany, and to John's Electric all have a notation as to the building address. This evidence, supported by the testimony of Mr. Carter and unrefuted by the appellees, should have been sufficient for the trial court to award these damages to the appellant. The appellant was entitled to the sum of $519.86.
As to the rest of the evidence presented, there was no evidence outside of the appellant's testimony that the expenditure related to the property in question. The trial court was not required to believe the appellant's testimony, and this court will not say that the court's decision was against the manifest weight of the evidence on those expenditures.
The appellant's first assignment of error is overruled in part and granted in part. This court enters judgment for the appellant for the sum of $519.86 in additional damages.
The second assignment of error:
 THE TRIAL COURT ERRED IN RULING THAT APPELLANT FAILED TO PRODUCE EVIDENCE OF REPUTATIONAL DAMAGES.
In this assignment of error, the appellant argues that his testimony regarding the damage to his credit was unrefuted and that this damage was proximately caused by the foreclosure on the property. As in the first assignment of error, the appellant has asserted a question of the manifest weight of the evidence. Every reasonable presumption must be made in favor of the judgment and the findings of fact. Seasons Coal Co,supra.
The appellant presented his testimony and one document indicating that he had been turned down for a home mortgage based on garnishment, attachment, foreclosure, collection action or judgment. No further evidence was provided. There were no credit reports and no documents to support the appellant's assertion that the specific basis for the denial of credit was the foreclosure of the Buckeye Road property. The trial court was not required to believe the appellant's testimony.
The appellant's second assignment of error is overruled.
The third assignment of error:
 THE TRIAL COURT ERRED IN RULING THAT APPELLANT FAILED TO PRODUCE EVIDENCE OF ATTORNEY'S FEES.
The appellant argues that he was entitled to an award for attorney fees under the plain language of the contract.
In Brandon/Wiant Co. v. Teamor (Oct. 21, 1999), Cuyahoga App. No. 76334, unreported, this court held:
 As a general rule, the reasonableness of the value of attorney's fees ordinarily must be proven by competent, credible evidence and is not a proper matter for judicial notice. Gioffre v. Simakis (1991), 72 Ohio App.3d 424, 428, 594 N.E.2d 1013. An exception to this general rule exists where the value of the services is so obviously reasonable that it may be determined as a matter of law. Frey v. Stegall (May 2, 1994), Athens App. No. 1568, unreported. However, absent such special circumstance, the determination of the reasonableness of attorneys fees is within the discretion of the trial court. Meacham v. Miller
(1992), 79 Ohio App.3d 35, 606 N.E.2d 996.
 The trial court must make a factual determination with regard to the reasonableness of the fees charged. Nelson v. Nimylowycz (July 13, 1995), Cuyahoga App. No. 67901, unreported; McCoy v. McCoy (1993), 91 Ohio App.3d 570, 584, 632 N.E.2d 1358. To determine reasonableness, the court may look to the guidelines set forth in DR 2-106(B). The ultimate determination of reasonableness must take into consideration all the factors relating to reasonableness of the fees in a particular case. See In re Wood (1977), 55 Ohio App.2d 67, 73-74, 379 N.E.2d 256. The trial court has the discretion to determine the amount of a fee award due to its superior understanding of the litigation and the desirability of avoiding frequent appellate review of what are essentially factual matters. Board of Educ. Austintown Sch. Dist. v. Mahoning C. (Dec. 18, 1998), Mahoning App. No. 95 CA 106, unreported; citing Hensley v. Eckerhart (1983), 461 U.S. 424 at 437, 103 S.Ct. 1933, 76 L.Ed.2d 40. Thus, an award for attorneys fees will not be overturned on appeal absent an abuse of discretion. Motorists Mutual Ins. Co. v. Bradenburg (1995), 72 Ohio St.3d 157, 160, 648 N.E.2d 488.
Thus, as this court has held, the appellant herein was required to provide evidence of the reasonableness of value of his attorney fees. Here, the appellant testified that his attorney was entitled to one-third of his recovery. This testimony was unsupported by documentary evidence or by testimony from the attorneys. There was no evidence before the court as to reasonableness of the fee sought by the appellant. This court cannot say that the trial court abused its discretion.
The appellant's third assignment of error is overruled.
The fourth assignment of error:
 THE TRIAL COURT ERRED IN FAILING TO AWARD PRE-JUDGMENT INTEREST AS CALLED FOR IN THE ORIGINAL CONTRACT.
The appellant asserts that he is entitled to prejudgment interest on the contract and that the amount is easily ascertainable. The appellee argues that the appellant failed to introduce any evidence as to how to calculate the amount of interest.
This court must agree with the appellee, the record is devoid of any evidence as to how to calculate the prejudgment interest and on what amount. Stevens Skin Softeners, Inc. v. Revco Drug Stores, Inc. (1997),121 Ohio App.3d 212.
The appellant's fourth assignment of error is overruled.
The fifth assignment of error:
 THE TRIAL COURT ERRED IN REDUCING THE AMOUNT OF THE AWARD BY $11,415 FOR RENTS RECEIVED BY APPELLANT.
The appellant asserts that the trial court erred in deducting the total rents collected for the 1993 year from his damages award. The appellees were to have performed on the contract by July 13, 1993, and the appellant asserts that rents received by him prior to that date should not have been subtracted from his award. The appellant also argues that the rents should be offset by the amount he paid on the mortgages.
This court notes that the appellant failed to introduce any evidence as to how much money he collected in rent prior and subsequent to the date the sale was to have closed. The record contains evidence that the appellant did not notify the tenants that they were to vacate the premises until May 10, 1994. The letter to the tenants states that rent was required for one-half of June should anyone choose to remain until June 15, 1994.
From this evidence, and absent any evidence to the contrary, the court was entitled to believe that the appellant collected rent on the property through the entire first half of 1994. As the court noted in its findings of facts and conclusions of law, the $11,415 is the only figure given for rents, but the Court believes this is not a full accounting for same. The court did not err in using the only figure provided by the appellant when it appears that the appellant continued to collect rent from tenants long after the closing date had passed. Finally, the appellant is incorrect in stating that rents should have been offset by the mortgage payments because he recouped the mortgage payments as a part of the total damage award against the appellees.
The appellant's fifth assignment of error is overruled.
This cause is affirmed as modified.
The court finds there were reasonable grounds for this appeal. It is, therefore, considered that said appellant(s) and appellee(s) each pay one-half of the costs herein.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
PATRICIA A. BLACKMON, J., and JAMES M. PORTER, J., CONCUR.
 _________________________________ JAMES D. SWEENEY, PRESIDING JUDGE
[1] The appellant incorrectly argues that the appellees failed to plead the affirmative defense of mitigation in a pleading. The defense of mitigation was raised by the appellees in the answer to the amended complaint.