IN RE ESTATE OF WOOD.

[Cite as In re Wood (1977), 55 Ohio App. 2d 67.]

(No. 77AP-374—Decided December 13, 1977.)

*Messrs. Moritz, McClure, Hughes & Hadley, Mr. Charles Price* and *Mr. John Berry,* for appellants City National Bank of Columbus, executor, and Dorothy, Richard and David Wood.

*Mr. John A. Carnahan,* for appellee John R. Davies.

STRAUSBAUGH, P. J. This is an appeal from an order of the Common Pleas Court, Probate Division, on the appli-

cation of John R. Davies for determination of his fee for legal services to the executor of the estate of Harold R. Wood.

The record indicates that appellee, Mr. Davies, testified that since his graduation from Ohio State University Law School, in 1932, he had been principally engaged in the general practice of law and has handled estates of all sizes and all complexities in the Probate Court; that he had drawn the will and other instruments involved in the estate and had been Mr. Wood's attorney prior to his death; that his hourly rates for services rendered Mr. Wood during his lifetime had been in the range of $50 to $60 an hour, although his rates have been going up; that he had never charged on an hourly basis for any estate that he had ever handled but, that, if he were charging on an hourly basis in a large estate with problems in it, he would take into consideration his background in the handling of estates, the experience he had in handling estates, the expertise developed in handling estates work done in various other estates that might be applicable in that estate and that he might charge a fee of $200 to $250 an hour; that he felt that the reasonable value of his services in this estate was $35,000.

The initial inventory of decedent's estate was $861,-380.67, of which $815,375.89 consisted of securities. Mr. Davies testified that the major portion of his services was in connection with these securities consisting of three closely held corporations, Car Parts Center, Inc., and Wood Motors, Inc., all valued at $660,514. Mr. Davies further testified that he was familiar with the charges made by lawyers with his experience and education and expertise in this community in similar estates and, that, his requested fee was reasonable in comparison with charges of other lawyers.

He further stated that the problems involved in this estate were both novel and complex because of the valuation for estate tax purposes of closely held corporations, which presented a different problem from estates having merely stock exchange stocks; that the size of the estate

was another factor to be considered; that another factor was the reduction in the federal estate tax because of his effort, whereby the tax was reduced by $38,000 to $39,000. He stated that in the preparation of the estate tax return, he set forth a tentative reasonable value of attorney fees as $25,000, which he felt would have been a fair fee for just the ordinary administration of an estate of this size; that after detailing the unusual services he came to the conclusion that the $25,000 was too low, so he revised his application to $35,000

During the course of the trial, counsel for appellants stated to the court that neither he nor the heirs were questioning Mr. Davies' integrity, nor the fact that Mr. Davies rendered valuable services to the estate. Davies' Exhibit B was a handwritten copy of services rendered in the estate. Mr. Davies testified that Davies' Exhibit C was a typewritten copy of that record and that the records were kept in the ordinary course of duties as the events occurred. He further stated upon cross-examination that although he always kept a daily log sheet he had not made any attempt to go over all of the items listed in the resume of his services to make an estimation of the amount of time involved and that he had no idea as to the amount of time spent, and that he was not going to guess as to the time of any of the items.

Mr. Raymond Bichimer, who was qualified in the area of probate estate tax law, testified that he had reviewed the records in the Wood estate and had talked to Mr. Davies and his lawyer about the happenings in the estate and had heard Mr. Davies testify on both direct and cross-examination; that in his opinion a reasonable fee for an attorney administering this estate would be anywhere between $33,-000 to $38,000, based upon the "* * * specifics as to the closely held corporations, the nature of those corporations, and the related problem that I felt would come upon in the administration of the estate, the federal estate tax return, the auditing of the federal estate return, and the resulting closing letter * * * the insurance proceeds that were involved, the settlement pre-payment promissory note * .* *

[a]nd along with all of these things the tax ramifications that were involved in it." He stated that his estimate of the amount of time spent, based upon the log that he had examined, would be probably anywhere from 400 to 500 hours. He stated that he would expect for that type of work an hourly reimbursement from the Franklin County Probate Court of anywhere from $40 to $70 an hour. He stated that he did not weigh the hours; that time is one factor you give and the other is the results and the benefit conferred to the client. He said he concurred with the feeling that $38,000 was the tax saving Mr. Davies had achieved in the estate based upon the facts he had, and that the professional reputation of Mr. Davies in the community was excellent.

Mr. Theodore G. Bontempo and Mr. H. Richard Wood testified on behalf of the heirs. Mr. Bontempo, a certified public accountant, attempted to minimize the services Mr. Davies rendered in connection with tax advice as to the widow's year's allowance. He stated that the appraisal of the stock value of the closely held corporations was not a complex task and that the great tax results claimed by Mr. Davies with the Internal Revenue Service were in fact mediocre and that he could have done better himself.

Mr. Richard Wood testified that Mr. Davies originally suggested a $25,000 fee and utilized the former minimum fee schedule of the Columbus Bar Association.

Mr. Davies testified that he did not base his fee on the minimum fee schedule because of the ruling of the Supreme Court.

The trial court in its opinion stated, in part, as follows:

" * * * The applicant testified extensively on legal services rendered in the administration of this estate, explained benefits conferred upon the estate by reason of his services and the things necessary to conclude the administration of the estate. The applicant testified that he kept no time records and refused to estimate the time that it might have taken him to administer the estate.

"Briefs filed on behalf of the beneficiaries in resisting this fee application make a great point of no time records being kept and insist that the court will not be able to assess fees until time is established.

"The leading case in Ohio on fees is *In Re Estate of Verbeck,* 173 Ohio St. 557. A full reading of that opinion does not lead this court to the conclusion that time is absolutely necessary. Even though time records are not absolutely mandatory in making a determination of fees, they certainly are helpful. More than anything else they give us a guide to the competence of counsel. In a very recent case an attorney alleged five hours of research time to determine the priority of a funeral bill in an estate that was not insolvent. A competent probate attorney should have known the answer to this without looking it up and should have also known that it would make no difference in a solvent estate. The conclusion that the court would have to reach from this testimony is that either the counsel was incompetent or dishonest or possibly both. The only advantage in time records in this particular case was to put the court on notice that this attorney needed to be watched carefully. If I were to employ a surgeon to take out my appendix I would much prefer paying $1,000.00 an hour to a surgeon who knew where my appendix was located and could take it out in a matter of 15 to 20 minutes rather than pay $200 an hour to a surgeon who would have to spend several hours hunting my appendix. In final analysis the court does, in fact, find time to be very helpful in determining fees and would certainly use it if available but the fact is the performance of certain legal services are only worth so much money regardless of the amount of time it took to perform that service.

"This court having taken into consideration the probate file of this court, the testimony of witnesses and exhibits produced, finds that the attorney of record, John L. Davies, performed competent legal services which were beneficial to the estate. The court further finds that from the services testified to, which make up the request for this fee, such services were all necessary for the successful com-

pletion of this estate. This court finds that the reasonable value of those services is $31,000.00.''

It is from the judgment entry journalizing the above opinion that this appeal is taken.

Appellants' first assignment of error is:

''The trial court abused its discretion in finding against the manifest weight of the evidence that $31,500.00 is a reasonable fee for legal services rendered by appellee to the Wood Estate.''

Appellants' second assignment of error is:

''The trial court erred in holding that evidence of time expended in performing legal services for an estate, particularly when those claimed services are primarily tax and business matters, need not be adduced by an attorney in applying for an allowance for a fee.''

At the outset we would note that the order of the trial court was for $31,000 rather than $31,500, as mentioned in appellants' first assignment of error, for legal services rendered.

The Supreme Court in *In re Estate of Verbeck* (1962), 173 Ohio St. 557, held that R. C. 2113.136 provides that where an attorney is employed in the administration of an estate, reasonable attorney fees shall be paid. As stated, at 558, 559:

''This means that reasonable attorney fees shall be based upon the actual services performed by the attorneys and upon the reasonable value of those services.

''It is the opinion of this court that the Probate Court erred in not requiring from the attorneys some evidence of the services rendered and evidence of the reasonable value of such services, in addition to the file in the Probate Court. * * * [T]he burden is upon the attorneys to introduce into the record sufficient evidence of the services performed and of the reasonable value of such services, to justify reasonable attorney fees in the amount awarded. * * *''

We find that the attorney in this case has done just that; he had not relied merely upon the file in the Probate Court. Instead he introduced sufficient evidence of the

services performed and of the reasonable value of such services which would justify attorney fees in the amount awarded. We find nothing in the holding of the Supreme Court in *Verbeck, supra,* which would require an attorney to set forth the time he has expended. Having stated this, however, we find that it is highly desirable that the maximum information be given by the applicant attorney to the Probate Court in order that the court have as much information as possible to base its judgment in setting the fees for the services rendered. As a part of this information it would be highly desirable for the attorney to give to the court information as to the amount of actual time expended by the attorney.

Judge Rutherford, sitting on this court in *Watters* v. *Love* (1965), 1 Ohio App. 2d 571, stated that in regard to time the referee's duty was to consider the extent to which the time expended was reasonably expended toward the end of a proper administration of the estate.

"Time expended and skill often bear a relation to each other, and in some cases time alleged to have been expended may reflect a discredit upon the amount of skill exercised, or vice versa. [Page 575.]

"A probate court judge is required by Section 2101.02, Revised Code, to have been admitted to practice as an attorney at law in this state for a period of at least six years immediately preceding his election, or to have previously served as a probate judge immediately prior to his election. It is our finding that he is qualified to make a determination, upon evidence, of reasonable attorney fees to be paid from the estate without the necessity of expert testimony. Expert testimony may, however be presented. If it is presented the credibility of the testimony of such witness and the weight to be given it is for the court to determine. [Page 577.]

"Fees which are reasonable must be reasonable both from the standpoint of the attorney rendering the services, and from the standpoint of the estate out of which payment is being made. The ultimate determination of reasonableness must take into consideration all the factors relating to rea-

sonableness of the fees in the particular case. The facts and circumstances vary so much from case to case that it is impossible to set forth an iron-clad rule other than the one that reasonable value must be substantiated by the evidence in each case." (Page 578.)

In *Swanson* v. *Swanson* (1976), 48 Ohio App. 2d 85, 90, the court, in an appeal involving the reasonableness of attorney fees as alimony in a divorce proceeding, referred to the guidelines for determining the reasonableness of a fee in the Code of Professional Responsibility, set forth by the Ohio Supreme Court in 1970, in 23 Ohio St. 2d:

" '1. The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly.

" '2. The likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

" '3. The fee customarily charged in the locality for similar legal services.

" '4. The amount involved and the results obtained.

" '5. The time limitations imposed by the client or by the circumstances.

" '6. The nature and length of the professional relationship with the client.

" '7. The experience, reputation, and ability of the lawyer or lawyers performing the services.

" '8. Whether the fee is fixed or contingent.' "

The court went on to say that:

"Under both the disciplinary rules and the extensive case law, *see* annotation 57 A. L. R. 3d 475, time expended is only *one* of the factors to be considered. The value of services may be greater or less than that which would be reflected by a simple multiplication of the hourly rate by time expended. We think that in divorce cases, as in probate cases, 'to employ the time clock method alone as the test for legal services would certainly be improper and result in completely inadequate fees in large estates and disproportionately high fees in modest ones.' " (Page 91.)

Two cases from the First Appellate District, Cler-

mont County, *In re Lazarus*, Nos. 559 and 560, unpublished, rendered October 20, 1975, involved the opinion of the trial court, which read, in part, as follows:

" '[T]he court not only looked at the exhibits and read them all, but also reviewed both files, and I think the law is clear that fees are determined on the basis of reasonable value as was pointed out, and not on a fee schedule. We think that time is an element in fee schedules, but certainly not the controlling element necessarily but it's one element that's in the picture.' "

In that case, the court held that appellant's claim that the court erred in not requiring evidence of the time expended by appellee in providing legal services was without merit, as the court had ample evidence as to the legal services performed by appellee and the reasonable value of these services to the estates.

We find that there is an implied duty on the part of the attorney, based upon the Code of Professional Responsibility set forth by the Ohio Supreme Court, to keep account of the time involved in the matter under consideration for the determination of the reasonableness of the fee. Time is one factor in such guidelines where there is no contract between the attorney and client. An attorney who fails to submit a time schedule to the trial court who sets a fee runs a serious risk of getting a lower fee than that to which he might otherwise be entitled. Although a trial court is by law experienced as stated in the *Love* case, *supra*, the trial court, as stated by the Supreme Court in the *Verbeck* case, *supra*, must base the fee determination upon evidence adduced and cannot substitute its own knowledge for evidence.

Here we find that there was sufficient evidence to support the finding of the trial court. There was not only the evidence of the applicant who testified both on direct and cross-examination, but there was also the testimony of Mr. Raymond Bichimer that a reasonable fee for the service rendered was between $33,000 and $38,000. The fee set by the trial court was less than that requested by Mr. Davies and less than the range set forth by Mr. Bichimer.

How the trial court arrived at that figure we do not know. However, there has been no request for separate findings of fact and conclusions of law in this case, and there has been no cross-appeal filed by Mr. Davies.

We further find that Mr. Davies is not limited to the hourly rate which he charged Mr. Wood during the decedent's lifetime. We further note that the case herein involves a rather large estate. The responsibility of an attorney is higher where a large estate is involved and, therefore, a higher hourly rate or a fee can be justified based upon the greater responsibility of counsel. We find that although there was in this case a conflict in the evidence which would permit reasonable minds to reach different conclusions upon the issues of fact, the trier of the facts, in this case the trial court, is the sole judge of the credibility of the witnesses and, therefore, its decision must be affirmed. Here there was evidence that a large estate was involved, that the attorney applicant had the expertise, experience and knowledge in the probate field, that he had an excellent reputation in the legal community, that there were serious and complex matters involved in the estate, and that the attorney effected tax savings in excess of the amount of the fee which he requested, which savings benefited the state; therefore, we cannot say that the trial court abused its discretion in finding that $31,000 is a reasonable fee for legal services rendered by appellee to the Wood estate. Appellants' first assignment of error is therefore overruled.

We likewise find that although it is highly desirable that maximum information be given to the trial court, including the time that the attorney expended in performing the services rendered, the decision and judgment rendered by the trial court was not against the manifest weight of the evidence and, therefore, appellants' second assignment of error is overruled, and the judgment is affirmed.

*Judgment affirmed.*

WHITESIDE and McCORMAC, JJ., concur.