[Cite as *Unick v. Pro-Cision, Inc.*, 2011-Ohio-1342.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| THOMAS UNICK, et al., | ) | |
| | ) | CASE NO. 09 MA 171 |
| PLAINTIFFS-APPELLANTS, | ) | |
| | ) | |
| - VS - | ) | OPINION |
| | ) | |
| PRO-CISION, INC., et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:        Civil Appeal from Common Pleas
Court, Case No. 05CV1401.

JUDGMENT:        Affirmed.

APPEARANCES:
For Plaintiffs-Appellants:        Attorney Geoffrey Eicher
Semple & Eicher Co. LPA
National City Center
Seventh Floor, One Cascade Plaza
Akron, OH 44308

For Defendants-Appellees:        Attorney Joseph P. Sontich, Jr.
Sontich & Sontich
1032 Boardman-Canfield Rd.
Suite 101
Youngstown, OH 44512

JUDGES:
Hon. Mary DeGenaro
Hon. Gene Donofrio
Hon. Joseph J. Vukovich

Dated: March 16, 2011

DeGenaro, J.

{¶1} Appellant, Thomas Unick, appeals the September 10, 2009 judgment of the Mahoning County Court of Common Pleas, which denied his request for $123,350.60 in legal fees, and reaffirmed a July 22, 2008 partial summary judgment award of $9,175.00 against Appellee, Pro-Cision, Inc., for breach of contract.

{¶2} On appeal, Unick does not refute the denial of $76,098.88 of the fees requested, but argues that the trial court abused its discretion in refusing to grant the remaining $47,851.72 of the requested attorney fees for the breach of contract action. Unick argues that his failure to provide evidence of the actual hours worked or the firms' hourly rates should not have been dispositive in the determination of whether the requested attorney fees were reasonable.

{¶3} Unick failed to provide evidence of the rates or hours worked by his attorneys, and he also failed to separate out many legal fees for services that had already been compensated in other court proceedings. Unick did not present competent credible evidence of reasonable attorney fees, and therefore did not meet his burden of proof. Accordingly, the trial court's denial of Unick's attorney fees is affirmed.

## Facts and Procedural History

{¶4} During the spring of 1999, Unick and Kovachik jointly formed Pro-Cision, Inc. They each invested $25,000.00 in the company, and each had a 50% ownership interest. In order to obtain lines of credit for the company, both Kovachik and Unick pledged personal assets as collateral. Unick pledged much more than Kovachick, including his tools and power equipment, his home, and two vehicles. Pursuant to the terms of the parties' corporation agreement, each owner had the right of first refusal to the other owner's stock ownership in the event of a buy-out.

{¶5} Soon after forming the company, Unick's son became ill and Unick needed to liquidate his stock in the company in order to raise money to care for his son. Subsequent to negotiations between the two parties, they entered a Stock Sale Agreement on February 7, 2000, wherein Unick was identified as the seller and Pro-Cision as the purchaser. The agreement required Pro-Cision to pay $15,000 for Unick's stock in monthly installments of $275, with a final lump sum payment of $8,400. The

agreement states that Pro-Cision had effected the removal of Unick's name from certain corporate obligations, including a loan from Second National Bank. However, the agreement notes that Pro-Cision had been unable to remove Unick's name from an obligation to National Machine Tool Financial Corporation, and thus Kovachick personally joined Pro-Cision to indemnify Unick from that particular obgligation.

{¶6}  The agreement further states that Pro-Cision will indemnify Unick and hold him harmless "from all loss, cost, damage, or expense, including reasonable attorneys' fees arising from" all liabilities of Pro-Cision and any taxes owed, as well as any "misrepresentation, breach of warranty, or default in any obligation on the part of [Pro-Cision] under this agreement." Finally, the agreement designates responsibility for litigation expenses as follows: "In the event of a default under this agreement, the defaulting party shall reimburse the nondefaulting party or parties for all costs and expenses reasonably incurred by the nondefaulting party or parties in connection with the default, including without limitation attorney's fees. Additionally, in the event a suit or action is filed to enforce this agreement, the prevailing party or parties shall be reimbursed by the other party for all costs and expenses incurred in connection with the suit or action, including without limitation, reasonabe attorney's fees at the trial level and on appeal."

{¶7}  Pro-Cision initially made a few installment payments per the agreement, but quickly ceased paying as required by the agreement. Additionally, the removal of Unick's name from the Second National Bank loan did not occur. Despite numerous requests, Second National Bank refused to release Unick as a guarantor, due to Pro-Cision's poor financial condition. Unick stated that he discovered the loan issue when he unsuccessfully sought to refinance his house, around April of 2000.

{¶8}  Unick retained Harrington Hoppe & Mitchell ("HHM") to determine his rights and potential actions regarding the Stock Sale Agreement. Unick incurred $32,251.72 in fees from HHM's services from 2001 to 2008. On April 17, 2002, Unick filed for Chapter 7 bankruptcy, primarily using the services of another attorney who specialized in bankruptcy proceedings, incurring $1,000 in attorney's fees.

{¶9} Unick's attorney at the time of the Stock Sale Agreement had represented to Unick that he had been released as guarantor of the Second National Bank loan, and Unick relied on that statement when executing the agreement. Unick filed a malpractice suit against his original attorney on September 10, 2002, primarily using the services of Semple and Eicher throughout the malpractice proceedings. Unick obtained a judgment for $250,000 on September 22, 2004 but settled for a reduced amount of $200,000 due to the malpractice insurance coverage limits. The judgment award was deposited into Unick's bankruptcy trust, and on March 21, 2005, the bankruptcy court authorized the trustee to pay Eicher $61,201.80 for legal fees and expenses owed by Unick related to the malpractice action.

{¶10} On April 13, 2005, represented by HHM, Unick filed a complaint against Pro-Cision, and against Kovachik individually, claiming breach of contract, promissory estoppel, misrepresentation, fraud in the inducement, and anticipatory repudiation. During the discovery process, Unick filed a Civ.R. 37 motion for sanctions against Pro-Cision for its failure to comply with court orders for discovery, and requested $1950.50 in attorney's fees. The trial court granted the motion on May 17, 2006, but summarily concluded that the reasonable attorney's fees associated with the motion were $450.00.

{¶11} On February 28, 2007, Unick filed a Partial Motion for Summary Judgment, solely addressing the breach of contract claim. Unick demanded $9,175.00, which was the amount still due under the parties' repayment clause of the Stock Sale Agreement. Unick also demanded $216,720.68 for all losses accrued as a result of Pro-Cision's and Kovachik's failure to indemnify Unick from the Second National Bank loan, including, among other things, all legal expenses during the bankruptcy, malpractice, and breach of contract proceedings up to the present date. According to the docket, on March 21, 2007, Pro-Cision filed a motion contra summary judgment, and a motion to strike the supporting affidavit from Unick's motion, but both of these motions are missing from the record.

{¶12} On June 22, 2007, the magistrate concluded that Pro-Cision and Kovachik had breached both the payment portion and the indemnification portion of the parties'

agreement. The magistrate concluded that the terms of the agreement obligated Pro-Cision to pay all damages "in connection with the default," including incidental and consequential damages flowing from the breach. The magistrate also found that Kovachik assumed individual liability for the failure to release Unick from the Second National Bank loan. The decision deferred ruling on damages until a later hearing.

{¶13} On October 16, 2007, upon consideration of the objections filed by Pro-Cision and Kovachik, the trial court found that the magistrate erred in determining that Kovachik had agreed to be held individually accountable for failure to remove Unick's name from the Second National Bank loan. The trial court remanded the magistrate's decision with instructions to rule on Pro-Cision's motion to strike and any remaining issues.

{¶14} On May 13, 2008, upon remand, the magistrate overruled Unick's summary judgment motion as against Kovachik, because he was not identified in the agreement as the purchaser, and was only individually identified as a responsible party regarding a separate loan that was not at issue in the case. The magistrate granted Pro-Cision's motion to strike, finding that Unick's affidavit and all other documents regarding specific damages lacked the requisite foundation, and that no evidence was submitted to establish the reasonableness of the claimed attorney fees. The magistrate noted that Unick had already received a malpractice verdict and settlement in the amount of $200,000 from his former attorney. The magistrate partially sustained Unick's motion against Pro-Cision for breach of contract, and the damages claim of $9,170.00. The magistrate found that material facts still remained regarding all other issues. On July 22, 2008, the trial court overruled Unick's objections, and adopted the magistrate's decision.

{¶15} In September of 2008, HHM withdrew as counsel, and Eicher filed an entry of appearance as counsel for Unick. Unick continued his litigation against Kovachik individually and against Pro-Cision for claims beyond the $9,170 awarded in summary judgment, including the claims of promissory estoppel, misrepresentation, fraud in the inducement, breach of contract and anticipatory breach. The matter proceeded to trial on January 13, 2009.

**{¶16}** One of the main issues at trial was the amount of reasonable attorney's fees to be awarded as a result of Pro-Cision's breach. Unick argued that but for the fact that he was not released from the Second National Bank debt as contractually provided, he would not have entered into bankruptcy. He argued that all of HHM's fees, all of the fees accumulated from the bankruptcy proceedings, and all of the fees of his present attorney were therefore chargeable to Pro-Cision.

**{¶17}** Attorney Donald Loepp was presented by Unick as an expert qualified to testify regarding legal fees. Loepp provided his opinion over Pro-Cision's objection, as Loepp had not submitted a report. Loepp described the claimed fees listed in Plaintiff's Exhibit 4, including $32,251.72 for HHM's service from 2001 to 2008 in various proceedings, $1,000.00 for bankruptcy counsel's services, $75,098.88 for Eicher's service in the malpractice proceedings, and a flat fee of $15,000.00 for Eicher's service in the present action, starting in August of 2008. Loepp opined that all of the charges in Exhibit 4 were commensurate with the work that was required and performed.

**{¶18}** Loepp testified that HHM's fees were primarily related to the contract action. Loepp noted that the docket indicated that the case has been extremely litigious, and opined that HHM would therefore need to perform the extensive services listed, and that the fees charged were reasonable. Loepp guessed that HHM's fees were akin to flat rate charges for each task, and opined that the fees charged for the tasks shown were reasonable fees within the legal community. Loepp identified Eicher's $15,000.00 fee as relating to the present proceedings, but offered no further opinion regarding the fee.

**{¶19}** Loepp conceded that the HHM billing had no indication of hours worked or of the hourly billing rate for any of their fees. Loepp further agreed that it was not possible to surmise HHM's billing rates, or to deduce how many hours had been spent on Unick's matters. Loepp admitted that he was aware of the sanctions granted earlier in the proceedings, but did not review whether HHM's requested attorney's fees for those sanctions were included a second time in the billing in Exhibit 4. Loepp also noted that Eicher represented Unick in the malpractice action on a contingency basis, and that the bankruptcy court had determined and paid that fee out of the $200,000.00 settlement.

**{¶20}** On June 3, 2009, the magistrate determined that all of Unick's claims, apart from Pro-Cision's breach of the Stock Sale Agreement, were meritless. The magistrate found that the fees associated with Unick's bankruptcy and malpractice proceedings were not contemplated in the Stock Sale Agreement. Regarding the remaining fees from HHM and Eicher, the magistrate found that there was "no evidence of time spent or an hourly rate for any of the claimed services and it is apparent that the services were in part blended with and in some instances directed primarily towards plaintiff's malpractice litigation and bankruptcy."

**{¶21}** The magistrate noted that, despite being given full opportunity to present adequate evidence to prove the reasonableness of the attorney's fees, Unick left the magistrate "only able to speculate or surmise how much time was involved for related services, which based upon the nature of the presentation of the evidence, would be necessarily [sic] to extrapolate the rate of charge for the services presented by the invoices." The magistrate reaffirmed that Pro-Cision was liable for breach of contract, and recommended that judgment be entered in Unick's favor only in the amount of $9170.00, plus interest.

**{¶22}** On September 10, 2009, the trial court affirmed the magistrate's decision, and Unick filed a timely notice of appeal.

### Reasonable Attorney's Fees

**{¶23}** In Unick's sole assignment of error, he asserts:

**{¶24}** "The trial court committed reversible error in holding the party who is pursuing payment of attorney's fees pursuant to a written contract must provide evidence of actual time expended by the attorney or the actual rate charged by the attorney for claimed fees."

**{¶25}** Pursuant to the "American Rule," each party in a lawsuit must generally bear its own attorney fees. *Sorin v. Bd. of Edn. of Warrensville Hts. School Dist.* (1976), 46 Ohio St.2d 177, 179, 75 O.O.2d 224, 347 N.E.2d 527. However, a court may be empowered to award attorney fees where there is a contractual agreement between the parties to shift fees. *McConnell v. Hunt Sports Ent.* (1999), 132 Ohio App.3d 657, 699,

725 N.E.2d 1193. Fee-shifting contractual provisions are generally enforceable "so long as the fees awarded are fair, just and reasonable as determined by the trial court upon full consideration of all of the circumstances of the case." *Wilborn v. Bank One Corp.,* 121 Ohio St.3d 546, 549, 2009-Ohio-306, 906 N.E.2d 396, at ¶8, quoting *Nottingdale Homeowner's Assn. v. Darby* (1987), 33 Ohio St.3d 32, 514 N.E.2d 702, syllabus.

{¶26} When a court is empowered to award attorney fees, "the amount of such fees is within the sound discretion of the trial court. Unless the amount of fees determined is so high or so low as to shock the conscience, an appellate court will not interfere." *Bittner v. Tri-County Toyota, Inc.* (1991), 58 Ohio St.3d 143, 146, 569 N.E.2d 464, quoting *Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc.* (1985), 23 Ohio App.3d 85, 91, 23 OBR 150, 491 N.E.2d 345. Thus a trial court's decision regarding the award of attorney fees should not be overturned on appeal absent an abuse of discretion.

{¶27} Although a contractual provision may entitle a prevailing party to attorney's fees, the prevailing party still has the burden of proving the reasonableness of the fees. *Stonehenge Land Co. v. Beazer Homes Invests., L.L.C.*, 177 Ohio App.3d 7, 2008-Ohio-148, 893 N.E.2d 855, at ¶45. A trial court's determination of reasonable attorney's fees must generally begin with a calculation of "the number of hours reasonably expended on the case times an hourly fee." *Bittner* at 145. This "lodestar figure" has been determined to be "[t]he most useful starting point for determining the amount of a reasonable fee," because it "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley v. Eckerhart* (1983), 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40. See, also, *Gisbrecht v. Barnhart* (2002), 535 U.S. 789, 800-802, 122 S.Ct. 1817, 152 L.Ed.2d 996.

{¶28} In order to establish this minimum baseline for the determination of attorney fees, the party requesting the award bears the burden of providing evidence of any hours worked that would be properly billed to the client. The hours worked should be necessary to the action and should not include "hours that are excessive, redundant, or otherwise unnecessary." *Hensley* at 434. The requesting party "should exercise 'billing judgment' with respect to hours worked, * * * and should maintain billing time records in a manner

that will enable a reviewing court to identify distinct claims". *Hensley* at 437 (citations omitted).  Even in the event that an attorney provides representation on a contingent-fee basis, the attorney must "keep an accurate record of time and resources expended" in order to be able to provide satisfactory proof of the reasonable value of the legal services rendered.  *Reid, Johnson, Downes, Andrachik & Webster v. Lansberry* (1994), 68 Ohio St.3d 570, 576, 629 N.E.2d 431, at fn.3.

{¶29}  The requesting party also bears the burden of proving the attorney's hourly rate, and of establishing that the hourly rate is reasonable.  "[T]he burden is on the fee applicant to produce satisfactory evidence-in addition to the attorney's own affidavits-that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation."  *Blum v. Stenson* (1984), 465 U.S. 886, 895-896, 104 S.Ct. 1541, 79 L.Ed.2d 891, at fn.11.

{¶30}  Once the requesting party has adequately proven an appropriate number of hours worked and the attorney's reasonable hourly fee, the trial court may modify the baseline calculation by considering the factors listed in former DR 2-106(B), now found in Prof. Cond. R. 1.5, which include "the time and labor involved in maintaining the litigation; the novelty and difficulty of the questions involved; the professional skill required to perform the necessary legal services; the attorney's inability to accept other cases; the fee customarily charged; the amount involved and the results obtained; any necessary time limitations; the nature and length of the attorney/client relationship; the experience, reputation, and ability of the attorney; and whether the fee is fixed or contingent.  All factors may not be applicable in all cases and the trial court has the discretion to determine which factors to apply, and in what manner that application will affect the initial calculation."  *Bittner* at 145-146.

{¶31}  In *Pracker v. Dolan* (Apr. 21, 1995), 11th Dist. No. 94-G-1867, the appellee had been awarded $6,450.73 in attorney's fees.  The attorney's hourly rate for services, as well as the reasonableness of the rate, had been established.  Id. at *4.  However, the prevailing party submitted billing statements that only listed the specific activities of the attorney and the total number of hours expended, but did not list the amount of time spent

for each activity. Id. The Eleventh District found that the appellee had presented insufficient evidence to allow a reviewable determination of reasonable attorney fees. Id.

{¶32} In *Stonehenge*, a jury awarded $100,000.00 in attorney's fees to Stonehenge, which the trial court subsequently reversed pursuant to a Civ.R. 50(B) judgment notwithstanding the verdict. *Stonehenge* at ¶17. At trial, Stonehenge had presented evidence as to the reasonableness of the attorney fees solely through the testimony of the company's owner. Id. at ¶44. The owner testified that the total attorney fees charged to the company were reasonable because they were comparable to the fee estimates that other attorneys had provided for his action. Id. at ¶47. The hourly rates had apparently been provided in certain attorney invoices, but the owner was not able to testify "whether the hourly rates charged are typical for the market, which hourly rates were charged to Stonehenge, exactly who had worked on the case, or how much Stonehenge had actually been charged. He did not personally review Stonehenge's attorney invoices." Id. The reviewing court concluded that the evidence presented was not sufficient for a determination of reasonable attorney fees, and upheld the trial court's decision to deny attorney fees. Id.

{¶33} Thus, a complaining party bears the burden of initially proving the number of hours an attorney spent on his case, the hourly rate that the attorney charges, and the reasonableness of that hourly rate, after which point the trial court may exercise its discretion to modify the amount pursuant to the factors described in Prof. Cond. R. 1.5. Pursuant to the application of this rule in *Pracker* and *Stonhenge*, when a prevailing party does not present sufficient evidence to support a request for attorney's fees, the trial court has the discretion to deny the request in its entirety.

{¶34} Unick presents a number of arguments in his attempt to demonstrate that he met his burden of proof and that he should have been awarded attorney's fees. He argues that he was not obligated to prove the number of hours worked by his attorneys, that the trial court's prior award of attorney fees during a sanctions hearing became the "law of the case" regarding the reasonableness of fees, that he had the contractual right

to collect attorney fees, and that Pro-Cision failed to prove that Unick's requested fees were unreasonable.

{¶35} In support of his claim for attorney's fees, Unick presented the testimony of Loepp and presented a compendium of legal fees charged by Eicher and HHM as an exhibit. The flat fee of $15,000.00 charged by Eicher did not include any explanation of hours worked or rates charged, and no further clarification was provided in Loepp's testimony. As for the invoices submitted to Unick by HHM, the documents list various actions performed at HHM, such as "Telephone conference with Mr. McGee, Re: Bankruptcy, Etc.," as well as the date of the action and the initials of the responsible attorney. The documents have no indication of the time spent on each action, or of the rates charged by the attorneys at HHM.

{¶36} Although Loepp opined that the fees charged by HHM were reasonable, he admitted during his testimony that Unick's documentary evidence of HHM's fees had no indication of hours worked or rates charged. Loepp agreed that it was not possible to surmise HHM's billing rates, or to deduce how many hours had been spent on Unick's matters. Loepp noted that it was surprising that so much time was spent litigating this case, given that it seemed to be a simple breach of contract action. Loepp's comment on this point indicates that the overall amount of work performed by HHM was excessive compared to what was necessary under typical circumstances, irrespective of the reasonableness of the charge for each particular task. Finally, Leopp admitted that he did not know if any of the charges listed by HHM had already been compensated in other proceedings.

{¶37} The billing records provided for HHM reveal that Unick was attempting to recover attorney fees for the firm's work on the contract case at issue, and also for the bankruptcy case, the malpractice case, the fees already awarded pursuant to the sanctions motion, and the fees denied under the sanctions motion. The trial court explicitly found that the bankruptcy and the malpractice litigation were not contemplated by the parties as damages for a breach of contract. The billing statements also relate to the legal fees accrued in Unick's action against Kovachik in his individual capacity.

Because Unick was not the prevailing party against Kovachik, his attorney fees are not recoverable. Because Unick did not segregate the attorney fees that were actually applicable to the present proceedings, the credibility of the HHM billing statements is exceedingly, if not completely, undermined.

{¶38} Unick did not meet its initial burden of proving hours worked and hourly fee. This alone prevented the trial court from being able to determine an award of attorney fees. Had the trial court merely guessed at the amount worked or the hourly fee charged by HHM or Eicher, there would be no "objective basis" from which the trial court might proceed to consider other factors, and it would not be possible for this court to conduct a meaningful review.

{¶39} Unick argues that he did meet his burden of proof, despite his lack of attorney time records, because he was not obligated to prove the number of hours worked by his attorneys. In support, Unick relies on *In Re: Estate of Wood* (1977), 55 Ohio App.2d 67, 9 O.O.3d 225, 379 N.E.2d 256. In *Wood*, the party requesting attorney fees presented testimony regarding the attorney's hourly rates, the reasonableness of the charges, and an estimation by an expert that the attorney had spent somewhere between 400 and 500 hours on the Wood's estate, but no actual record of the amount of time the attorney had worked on the matter. Id. at 68-70. The Tenth District held that time records are "not absolutely mandatory in making a determination of fees[.]" Id. at 71.

{¶40} *Wood* does provide that there are some rare cases wherein the determination of reasonable time spent by an attorney does not require proof of hours worked. However, this notion simply does not support Unick's inverse argument that a trial court abuses its discretion by declining to award attorney's fees when the litigant has failed to prove the number of hours worked by his attorney. Moreover, the amount of evidence missing in the case at hand far surpasses the evidence that was missing in *Wood*. Here, not only did Unick fail to provide any time records, he failed to provide any estimation of the amount or reasonableness of time spent by his attorneys, he failed to prove the rate of the attorneys' charges, and he failed to demonstrate which of the charges in HHM's billing were actually applicable to the breach of contract action.

**{¶41}** Unick's failure to provide evidence of actual time expended was only one of many reasons that the trial court decided not to award attorney fees. Unick's argument on this point is not well-taken.

**{¶42}** Additionally, Unick argues that the trial court's denial of attorney fees was an abuse of discretion because it disregarded Unick's clear right to attorney fees pursuant to his contract with Pro-Cision. It is true that the contract between the parties allowed the trial court to award attorney fees to the prevailing party in the event of a legal dispute. See *McConnell*, supra, at 699. However, Unick still had the burden of proving the reasonableness of the fees. *Stonehenge* at ¶45. Because Unick failed to meet his burden, he had no right to collect attorney's fees under the contract.

**{¶43}** Unick further argues that he adequately proved his attorney fees because Pro-Cision did not contest the reasonableness of Unick's attorney fees, and provided no evidence to demonstrate that the attorney fees were unreasonable. Contrary to Unick's claim, the record reflects that Pro-Cision did in fact contest Unick's request for attorney's fees. Further, Unick bore the burden of first proving the reasonableness of his fees, thus his failure to meet his burden rendered Pro-Cision's lack of evidence immaterial.

**{¶44}** Finally, Unick argues that this court should analogize the law of the case doctrine to his proceedings, and conclude that the trial court's decision to award some attorney fees for Civ.R. 37 sanctions obligated the trial court to similarly award attorney fees related to the breach of contract decision. Pursuant to the law-of-the-case doctrine, an inferior court must act in accordance with the ruling of a reviewing court when conducting subsequent proceedings on the same matter. *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 3, 11 OBR 1, 462 N.E.2d 410. This doctrine is completely inapplicable to the case at hand. Unick is merely arguing that the incongruity between the sanctions award and the final award decision indicates that the trial court's decision was arbitrary, and therefore an abuse of discretion. Moreover, the record does not contain the information required to review the reasoning behind the trial court's sanctions decision, such as a transcript or the evidence submitted at the sanctions hearing. A comparison between the trial court's two actions is not possible.

**{¶45}** Given the foregoing, Unick did not meet his burden of proving reasonable attorney's fees associated with his action on breach of contract, and his arguments regarding the evidence submitted and the reasoning of the trial court are not well-taken. Unick's sole assignment of error is therefore meritless. Accordingly, the decision of the trial court is affirmed.

Donofrio, J., concurs.

Vukovich, J., concurs.