[Cite as *Scipio v. Used Car Connection, Inc.*, 2013-Ohio-4325.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| SHOFFON SCIPIO, | ) | |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | CASE NO. 12 MA 89 |
| V. | ) | |
| | ) | OPINION |
| USED CAR CONNECTION, INC., ET AL., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS: Civil Appeal from Court of Common Pleas of Mahoning County, Ohio Case No. 08CV3269

JUDGMENT: Affirmed

APPEARANCES:
For Plaintiff-Appellant
Attorney Cherie H. Howard
P.O. Box 357
Youngstown, Ohio 44501

For Defendant-Appellee
Attorney Diane S. A. Vettori
60 Westchester Drive, Suite 1
Austintown, Ohio 44514

JUDGES:

Hon. Gene Donofrio
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated: September 24, 2013

DONOFRIO, J.

{¶1} Plaintiff-appellant, Shoffon Scipio, appeals from a Mahoning County Common Pleas Court judgment awarding her attorney fees of $3,500.

{¶2} On August 13, 2008, appellant filed a complaint against defendant-appellee, Used Car Connection, Inc., alleging violations of the Retail Installment Sales Act and the Consumer Sales Practices Act. She later filed a supplemental complaint asserting improper disposition of collateral. Appellee filed a counterclaim alleging appellant failed to make timely payments or to pay a mechanic's bill.

{¶3} On October 22, 2009, appellant filed a motion for summary judgment. A magistrate sustained appellant's motion in part, finding that she was entitled to statutory damages of $600, entitled to judgment on appellee's counterclaim, and entitled to an award of reasonable attorney's fees to be determined at a later hearing. Neither party filed objections. The trial court subsequently adopted the magistrate's decision and entered judgment accordingly.

{¶4} Next, appellant filed a motion for attorney's fees in the amount of $10,000. She later filed a supplemental motion for attorney's fees in the amount of an additional $4,000 and $300 in costs, which she stated her attorney incurred in establishing her entitlement to a fees award. The magistrate held a hearing on appellant's motion where he heard testimony from appellant's attorney and an expert witness on each side.

{¶5} The magistrate sustained both appellant's motion and supplemental motion. He awarded a total of $10,158 in attorney's fees against appellee.

{¶6} Appellee filed objections to the magistrate's decision arguing that the fee award was excessive. The trial court held a hearing on the objections. The court found that in light of the fact that appellant was absent from the court's jurisdiction for an extensive period of time during the course of the case, the case could not be settled and the efficient administration of justice was frustrated. It modified the magistrate's award to $3,500. Appellant appealed from that judgment.

{¶7} On appeal, this court found that the trial court had failed to apply the methodology set out in *Bittner v. Tri-County Toyota*, 58 Ohio St.3d 143, 146, 569

N.E.2d 464 (1991), for determining reasonable attorney fees. *Scipio v. Used Car Connection, Inc.*, 7th Dist. No. 10-MA-186, 2012-Ohio-891. Therefore, we reversed the judgment and remanded the matter to the trial court with instructions to set forth its methodology in determining the amount of attorney fees with sufficient specificity so as to satisfy the criteria contemplated by *Bittner*.

{¶8} On remand, the trial court once again awarded appellant $3,500 in attorney fees. This time the court gave a detailed explanation of its award by analyzing each of the *Bittner* considerations.

{¶9} Appellant filed a timely notice of appeal on May 14, 2012.

{¶10} Appellant raises four assignments of error. All of her assignments of error assert the court abused its discretion in making its award of attorney's fees.

{¶11} The standard of review on the issue of attorney fees is abuse of discretion. *Motorists Mut. Ins. Co. v. Brandenburg*, 72 Ohio St.3d 157, 160, 648 N.E.2d 488 (1995). Abuse of discretion connotes more than an error of law; it implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

> Unless the amount of [attorney] fees determined is so high or so low as to shock the conscience, an appellate court will not interfere. The trial judge which participated not only in the trial but also in many of the preliminary proceedings leading up to the trial has an infinitely better opportunity to determine the value of services rendered by lawyers who have tried a case before him than does an appellate court.

*Bittner v. Tri-County Toyota*, 58 Ohio St.3d 143, 146, 569 N.E.2d 464 (1991), quoting *Brooks v. Hurst Buick-Pontiac-Olds-GMC, Inc.*, 23 Ohio App.3d 85, 91, 491 N.E.2d 345 (12th Dist.1985).

{¶12} The Consumer Sales Practices Act (CSPA) provides for the award of reasonable attorney fees, limited to the work reasonably performed, if the supplier has knowingly committed an act or practice that violates the CSPA. R.C.

1345.09(F)(2). When the supplier in a consumer transaction intentionally committed an act or practice which is deceptive, unfair, or unconscionable, the trial court may award a consumer reasonable attorney fees. *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 548 N.E.2d 933 (1990), syllabus; R.C. 1345.09(F)(2).

{¶13} Appellant's first assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN, IN AWARDING ATTORNEY FEES PURSUANT TO THE CSPA, IT FAILED TO PROPERLY APPLY THE LODESTAR CALCULATION TO OBJECTIVELY DETERMINE THE ATTORNEY FEES THAT SHOULD BE AWARDED.

{¶14} Appellant argues, citing federal case law for support, that the lodestar figure is presumed reasonable and modifications to the lodestar should be rare. She points out the magistrate noted in his decision that he "scrutinized" her attorney's time records "line by line" before arriving at his conclusion that $10,158 was a reasonable fee in this case. Appellant points out there is no indication by the trial court that it engaged in a similar, comprehensive analysis before reducing the fee award to $3,500. By failing to engage in such a reasoned analysis, appellant argues, the trial court abused its discretion.

{¶15} According to *Bittner*, "[w]hen awarding reasonable attorney fees pursuant to R.C. 1345.09(F)(2), the trial court should first calculate the number of hours reasonably expended on the case times an hourly fee, and then may modify that calculation by application of the factors listed in DR 2-106(B)." *Id.* at the syllabus.

{¶16} Since *Bittner* was decided, the Rules of Professional Conduct have replaced the Code of Professional Responsibility in Ohio. So now the factors set out in Prof.Cond.R. 1 .5(a) apply as they are based on former DR 2-106(B). *Unick v. ProCision, Inc.*, 7th Dist. No. 09-MA-171, 2011-Ohio-1342, ¶30.

{¶17} Prof.Cond.R. 1.5(a) prohibits excessive fees:

(a) A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

**{¶18}** In reaching its determination as to reasonable attorney fees in this case the trial court followed the *Bittner* analysis. The court first found that 17.5 to 35 hours was a reasonable amount of time under the circumstances to properly investigate, prepare, and litigate this case. The court then found that $100 an hour was a reasonable rate considering the nature of the case, the experience of counsel, and the result achieved.

**{¶19}** The court took into consideration the Prof.Cond.R. 1.5(a) factors. The court found that the time and labor required, the novelty and difficulty of the issues involved, and the skill necessary to properly perform the legal services did not justify

the fee sought by appellant's counsel. Citing, Prof.Cond.R. 1.5(a)(1). It found the acceptance of this case did not preclude other employment. Citing, Prof.Cond.R. 1.5(a)(2). The court noted the fee charged in this locality for similar services, the amount involved, and the results obtained did not justify the amount awarded by the magistrate. Citing, Prof.Cond.R. 1.5(a)(3) and (4). The court further opined the fees it was awarding were "generous." It found the time limitations imposed by appellant and the circumstances "speak strongly against" counsel's application for fees since appellant "was the cause of extraordinary delay and frustration of prompt justice." Citing, Prof.Cond.R. 1.5(a)(5). Because appellant sought free services from Legal Aid, the nature and length of any professional relationship with the client was of minimal consideration. Citing, Prof.Cond.R. 1.5(a)(6). The experience, reputation, and ability of the lawyer performing the services for appellant did not justify an hourly fee in excess of that which is customary in this locality. Citing, Prof.Cond.R. 1.5(a)(7). The court noted a customary fee for a $600 recovery is a percentage of the recovery, not a substantial multiple of what the plaintiff recovers. It further noted that the hourly rate for a capital murder case is $70. And the court assumed the fee in this case was to be hourly; however, there was no contract presented. Citing, Prof.Cond.R. 1.5(a)(8).

**{¶20}** The court went on to find the fee requested by appellant's counsel was excessive. It found that $100 per hour was the highest proper legal fee allowable for the services rendered and 35 hours was the "absolute maximum time any competent lawyer could ever possibly devote to this case." Thus, the court entered a fee award of $3,500.

**{¶21}** Appellant essentially asserts here that the trial court failed to give a detailed analysis as to why it awarded only $3,500 in fees. However, as indicated by the trial court's findings, it analyzed each of the *Bittner* factors in relation to the facts of this case. It made a specific finding as to each factor and entered a two-and-a-half page judgment entry detailing its findings. Thus, the court did engage in the analysis contemplated by *Bittner*.

**{¶22}** Appellant also implies that the court failed to properly first compute the lodestar amount and then apply any deviation.

**{¶23}** But the two inquires of *Bittner*, the lodestar calculation and the application of the Prof.Cond.R. 1.5(a) factors, may overlap "because several of the reasonableness factors are often subsumed within the initial lodestar calculation and normally will not provide an independent basis for adjusting the fee award." *Miller v. Grimsley*, 197 Ohio App.3d 167, 2011-Ohio-6049, 966 N.E.2d 932, ¶14 (10th Dist.). In calculating the lodestar amount, the court must necessarily exclude hours that were redundant, unnecessary, or excessive in relation to the work done. *Id.* And in determining whether hours were unreasonably expended, the court necessarily considers the first three reasonableness factors. *Patrick v. Hilock Auto Sales*, 10th Dist. No. 4076, 2012-Ohio-4076, ¶18.

**{¶24}** Here, the trial court awarded attorney fees of $100 per hour, though appellant's attorney requested $200 per hour and the testimony was that $175 to $250 was customary. In doing so, the court gave a detailed application of *Bittner's* factors. The court relied on the Professional Rules of Conduct factors to reduce the hourly rate and the hours expended. Thus, we cannot find that the trial court abused its discretion in the manner it applied the *Bittner* analysis.

**{¶25}** There was also evidence presented at the fee hearing to support the court's findings.

**{¶26}** Appellant's counsel testified that she spent 77.65 hours on this case. (Tr. 23). And she arbitrarily reduced the number of hours for which she was seeking fees due to "self-monitoring" and spending time on typing, proofreading, and copying. (Tr. 24). Thus, counsel stated that she was seeking fees for 50 hours of work. (Tr. 24). She stated that she was seeking an hourly rate of $200. (Tr. 24). She arrived at this hourly rate by talking to other attorneys in the area, her years of experience, and the nature of the work. (Tr. 25).

**{¶27}** Appellant's counsel called Attorney Alan Matavich as an expert witness. Atty. Matavich testified that he considered the number of hours spent on the case to

be reasonable. (Tr. 57). He opined that in this locality a reasonable hourly rate for an attorney concentrating on consumer law was $175 to $200. (Tr. 59).

**{¶28}** Appellee called Attorney Matthew Giannini as an expert witness. Atty. Giannini opined that the amount of hours appellant's counsel spent on the case to take it to summary judgment was not appropriate. (Tr. 73). He opined that a case of this nature would probably take 15 to 20 hours. (Tr. 73). He further stated that his hourly rate on a viable consumer case would be $250. (Tr. 86).

**{¶29}** A complaining party bears the initial burden of proving the number of hours the attorney spent on the case, the hourly rate charged, and the reasonableness of that hourly rate, after which point the trial court may exercise its discretion to modify the amount pursuant to the factors described in Prof.Cond.R. 1.5. *Unick v. Pro-Cision*, 7th Dist. No. 09-MA-171, 2011-Ohio-1342, ¶33.

**{¶30}** In this case, the court determined that 35 hours at the hourly rate of $100 was reasonable. While the witnesses testified that $175 to $250 an hour was a reasonable hourly rate, the trial court reduced this rate based on the Prof.Cond.R. 1.5(a) factors. As stated above, the trial court analyzed each of the eight factors and concluded that they warranted a lesser fee than what appellant's counsel requested. The trial court did not act arbitrarily, unconscionably, or unreasonably in doing so.

**{¶31}** Accordingly, appellant's first assignment of error is without merit.

**{¶32}** Appellant's second assignment of error states:

> THE TRIAL COURT ABUSED ITS DISCRETION BY FACTORING INTO ITS *BITTNER* ANALYSIS THE FACT THAT APPELLANT RECEIVED FREE LEGAL REPRESENTATION.

**{¶33}** Here appellant contends the trial court should not have considered the fact that she received free legal aid in this case. She points out that courts in numerous landlord-tenant cases have found attorneys who provide clients services for free or at a minimal cost may recover fees to the same extent as other attorneys under a fee-shifting provision. To hold otherwise, appellant argues, would allow

landlords or in this case consumer suppliers, to benefit from the poor financial circumstances of the plaintiff. Furthermore, appellant points out that nowhere in *Bittner* or Prof.Cond.R. 1.5(a) does it state the court should consider whether legal services received by the prevailing party were paid for or free. She asserts that had the trial court applied the *Bittner* factors properly, it would have avoided a comparison to appointed counsel in capital murder cases. She notes that appointed attorneys in criminal cases are paid through scarce public funding but that attorney fees in CSPA cases are paid by private business entities and are intended to deter violations of the CSPA.

{¶34} Appellant is taking the court's reference to her free legal services out of context. The only mention the trial court made to appellant's free legal services from Legal Aid was in the context of examining Prof.Cond.R. 1.5(a)(6). Pursuant to this factor, the court was to consider the nature and length of any professional relationship between appellant and her counsel. The court found that because appellant sought free services from Legal Aid, the nature and length of any professional relationship with the client was of minimal consideration. The court did not find, as appellant seems to suggest, that because appellant received free legal services, the fee award should automatically be decreased. Thus, the trial court did not abuse its discretion in mentioning the fact that appellant's legal services were free.

{¶35} Accordingly, appellant's second assignment of error is without merit.

{¶36} Appellant's third assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT REDUCED THE ATTORNEY FEE AWARD ON THE ERRONEOUS FINDING THAT APPELLANT HAD IMPEDED A SETTLEMENT OF THE CASE AND THEREBY INCREASED THE FEES SOUGHT BY APPELLANT'S LAWYER.

{¶37} In this assignment of error, appellant contends the trial court abused its

discretion in reducing the fee award based on its finding that appellant was the cause of extraordinary delay in this case. She claims this finding lacks any evidentiary basis. At best, appellant states the evidence shows an insignificant gap in communication for about six weeks between her and her counsel following her relocation to Indianapolis. Instead, appellant claims any delays in this case should be attributable to appellee because it prolonged settlement negotiations and requested numerous continuances.

{¶38} The complaint in this case was filed August 13, 2008. Numerous continuances were requested by both parties and granted by the court. On September 1, 2009, appellant's counsel requested an additional 14 days to file a summary judgment motion because counsel had not been able to obtain appellant's signature on an affidavit. On October 22, 2009, appellant's counsel filed a motion for leave to file the summary judgment motion instanter. The basis for the motion was that counsel had lost communication with appellant because appellant moved to Indiana and had not notified her counsel of her new address. Thus, appellant caused an approximate two-month delay by moving and not staying in touch with her counsel.

{¶39} Additionally, on cross examination, appellant's counsel seemed to acquiesce to the fact that she may not have relayed settlement offers to appellant in a timely manner. (Tr. 32-36). When asked about communicating one settlement offer to appellant, counsel indicated that appellant moved to Indianapolis, did not have a phone, and only communicated with her by way of e-mail at the public library. (Tr. 32-33). And when asked about communicating a second settlement offer, appellant's counsel could not seem to recall it. (Tr. 33).

{¶40} Whether the delay caused by appellant and/or her counsel was "extraordinary" as found by the trial court is debatable. However, appellant and/or her counsel clearly caused some delay in this case. And it seems logical that the longer the case continued on, the more unnecessary hours counsel would have spent on it. Thus, we cannot find that the trial court's use of appellant's delay in this

case as one consideration in reducing the fee was arbitrary, unreasonable, or unconscionable.

**{¶41}** Accordingly, appellant's third assignment of error is without merit.

**{¶42}** Appellant's fourth assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT CONCLUDED THAT $100 PER HOUR WAS THE PREVAILING FEE FOR CONSUMER CASES IN THE LOCALITY.

**{¶43}** Appellant contends the evidence presented was that the prevailing wage in consumer cases in this locality is between $175 and $250 per hour. Thus, she asserts the court's hourly rate of $100 per hour was unreasonable.

**{¶44}** The trial court specifically found $100 to be a reasonable hourly rate "taking into account the nature of the case, the experience of counsel and the result achieved." While we may not have awarded the same hourly rate in this case, that is not our standard of review nor does it render the trial court's award unreasonable, arbitrary, or unconscionable. Abuse of discretion has been said to exist in the rare instance where a decision is grossly violative of fact and logic so that it demonstrates perversity of will, defiance of judgment, undue passion, or extreme bias. *Brooks v. Wilson*, 98 Ohio App.3d 301, 304, 648 N.E.2d 352 (1994), citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985). As stated above, the court used the factors set out in the Professional Conduct Rules to reduce the hourly rate and hours worked. Thus, we cannot conclude that the trial court abused its discretion in using an hourly rate that was less than what the expert witnesses testified was customary in this locality. The court adjusted the rate based on the facts and nature of this particular case.

**{¶45}** Accordingly, appellant's fourth assignment of error is without merit.

**{¶46}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Waite, J., concurs.

DeGenaro, P.J., concurs.