[Cite as *United Assn. of Journeymen & Apprentices of the Plumbing & Pipe Fitting Industry v. Jack's Heating, Air Conditioning & Plumbing, Inc.*, 2013-Ohio-144.]

### IN THE COURT OF APPEALS OF OHIO
### THIRD APPELLATE DISTRICT
### HARDIN COUNTY

UNITED ASSOCIATION OF
JOURNEYMAN AND
APPRENTICES OF THE PLUMBING
AND PIPE FITTING INDUSTRY,
LOCAL UNION NO. 776,

                                                     CASE NO.  6-12-06

    PLAINTIFF-APPELLANT,

    v.

JACK'S HEATING, AIR
CONDITIONING & PLUMBING, INC.,        O P I N I O N

    DEFENDANT-APPELLEE.


**Appeal from Hardin County Common Pleas Court**
**Trial Court No. CV 20081164**

**Judgment Affirmed in Part, Reversed in Part and Cause Remanded**

**Date of Decision:   January 22, 2013**


APPEARANCES:

    *Joseph M. D'Angelo*  for Appellant

    *William E. Clark*   for Appellee

**ROGERS, J.**

{¶1} Plaintiff-Appellant, United Association of Journeymen and Apprentices of the Plumbing and Pipe Fitting Industry, Local Union Number 776 ("Local 776"), appeals the judgment of the Hardin County Court of Common Pleas denying its request for attorney fees and court costs. On appeal, Local 776 argues that its introduction of an itemized billing statement, two Ohio State Bar Association ("OSBA") publications regarding attorney billing practices, and the testimony of its counsel should have led the trial court to grant its request for attorney fees and court costs. For the reasons that follow, we affirm in part and reverse in part the trial court's judgment.

{¶2} In May 2008, Local 776 filed a complaint against Defendant-Appellee, Jack's Heating, Air Conditioning and Plumbing, Inc. ("Jack's"), alleging that Jack's violated Ohio's prevailing wage law. On July 9, 2010, the trial court granted Local 776's summary judgment on its claims that Jack's violated the prevailing wage law. In its judgment entry, the trial court stated that Local 776 was entitled to attorney fees, but it failed to actually order that Jack's pay such attorney fees.

{¶3} Both parties appealed to this court. On January 18, 2011, we affirmed the trial court's grant of summary judgment in Local 776's favor. But, we also reversed the trial court on the basis that it failed to order that Jack's pay Local

776's attorney fees and court costs. The matter was then remanded to the trial court. *See United Assn. of Journeymen & Apprentices of the Plumbing & Pipe Fitting Industry, Local Union No. 776 v. Jack's Heating, Air Conditioning & Plumbing, Inc.*, 3d Dist. No. 6-10-11, 2011-Ohio-167 ("*Jack's I*").

{¶4} On remand, the trial court conducted a hearing on May 3, 2011 to determine the issue of attorney fees. Local 776's attorney throughout the course of these proceedings was Joseph D'Angelo. During the presentation of evidence, D'Angelo introduced the following exhibits: (1) an itemized bill from his law firm for its services on behalf of Local 776 in this matter (the "Bill"); (2) an OSBA publication entitled "The Economics of Law Practice in Ohio in 2010" (the "2010 Survey"); and (3) another OSBA publication called "The Economics of Law Practice in Ohio in 2007" (the "2007 Survey").

{¶5} The Bill details the work that D'Angelo and other members of his law firm purportedly performed during the course of this action from May 21, 2008 until November 30, 2010. Each time entry describes the task performed and includes the initials of the firm employee who performed it. However, the Bill does not include a key that matches the initials with the name and position of the

firm employees who performed the described work.[1]  In total, the Bill lists approximately 400 hours of work performed and $65,537.55 in fees and costs. When D'Angelo offered the Bill into evidence, he was not under oath.  At that time, he stated that he thought "$65,000 [was] a reasonable allotment of time and expense for the undertaking."  May 3, 2011 Hearing Transcript, p. 5.

{¶6} The OSBA publications provide the results of online surveys distributed to Ohio law firms regarding their billing practices.  Both publications provide the median and average billing rate for all Ohio law firms that responded. They also break down the median and average billing rate based on the size, location, and practice area of the responding law firms.  Further, the publications list the median and average billing rate for partners and associates based on firm size.

{¶7} The 2010 Survey covers the billing practices of Ohio law firms in 2009 while the 2007 Survey covers 2006 trends.  A review of the 2010 Survey reveals the following relevant information regarding billing practices in 2009:

Median Hourly Rate (all firms): $200;
Median Hourly Rate (firms with 3-6 attorneys): $198;
Median Hourly Rate (firms in Northwest region): $175;
Median Hourly Rate (firms in Toledo): $185;
Median Hourly Rate (general practice firms): $160;

---

[1] We note that D'Angelo filed a brief with the trial court that identifies the names and positions of the employees who are shown as billing time.  These identifications, however, are merely listed in the argument section of the brief and not included in evidentiary material, such as an affidavit.  Further, there was no testimony during the hearing as to these identifications.  Consequently, there is no evidence in the record identifying the names and positions of the employees whose initials are included in the itemized bill.

-4-

> Median Hourly Rate (labor law firms representing unions): $150;
> Median Hourly Rate (partners in firms with 2-7 partners): $200;
> Median Hourly Rate (associates in firms with 2-7 partners): $175.
> (Exhibit 2, p. 23-24).

Meanwhile, the 2007 survey provides the 2006 median hourly rate for each of these categories. When introducing the publications, D'Angelo offered no testimony indicating which median hourly rate was appropriate to consider when assessing the reasonableness of his request for attorney fees.

{¶8} After introducing these exhibits into evidence, D'Angelo rested on behalf of Local 776. Jack's then called D'Angelo as though on cross-examination. At that time, the trial court placed D'Angelo under oath. His testimony revealed that his office is located in Toledo and that he is a partner in a law firm with five attorneys. When asked the nature of his practice, D'Angelo indicated that he does work on behalf of labor unions and that his firm is "full service." *Id*. at p. 9.

{¶9} In regard to the Bill, D'Angelo testified that he reviewed it and "eliminated any time entries that appeared in my opinion to be duplicative of other entries that were already there." *Id*. at p. 10. He also stated that a variety of associates and law clerks performed work on the case to keep fees to a minimum. Further, D'Angelo conceded that several of the time entries in the Bill were for work on pleadings that were never filed with the trial court. Finally, he admitted that Local 776 was requesting $65,000 in attorney fees for his firm's efforts in obtaining a judgment of approximately $5,000 against Jack's.

{¶10} After Jack's counsel finished his questioning, the parties presented closing arguments. In his closing, D'Angelo indicated that he has 16 years of legal experience. D'Angelo also supplemented the evidence and argument presented at the hearing by filing a brief that summarized Local 776's legal position on its request for attorney fees. No evidentiary material was attached to the brief.

{¶11} On December 23, 2011, the magistrate denied Local 776's request for attorney fees. The basis for the denial was that Local 776 "failed to present sufficient evidence to support its request * * *." (Docket No. 51, p. 4). While the magistrate noted that the Bill was "detailed and comprehensive," Local 776 failed to present "disinterested third-party evidence that the number of billable hours was either reasonable or necessary to the action." (*Id.*). Further, the magistrate found little value in the 2010 Survey because although it "indicated the range of fees charged by lawyers in the Toledo area," Local 776 did not provide "evidence as to the skill, reputation, experience or ability of the lawyer(s) involved, or the complexity of the issues * * *." (*Id.*).

{¶12} Local 776 objected to the magistrate's decision. After each party filed its respective briefs, the trial court affirmed the magistrate's decision on the basis that Local 776 "has failed to meet its evidentiary burden in supporting its request for attorney's fees." (Docket No. 59).

{¶13} It is from this judgment that Local 776 filed this timely appeal, presenting the following assignment of error for our review.

### Assignment of Error No. I

**THE TRIAL COURT COMMITTED REVERSIBLE ERROR WHEN IT REFUSED TO AWARD COSTS AND ATTORNEYS' FEES TO THE PLAINTIFF/APPELLANT.**

{¶14} In its sole assignment of error, Local 776 contends that since it presented sufficient evidence for the trial court to award attorney fees and court costs, the trial court erred in failing to grant such an award. We agree in part and disagree in part.

### Standard of Review

{¶15} We review a trial court's attorney fees award for abuse of discretion. *Bittner v. Tri-Cty. Toyota, Inc.*, 58 Ohio St.3d 143, 146 (1991). A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *See State v. Boles*, 2d Dist. No. 23037, 2010-Ohio-278, ¶17-18, citing *Black's Law Dictionary* 11 (8th Ed.2004). Under the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). In applying abuse of discretion review to attorney fee awards, we only reverse a trial court's order upon a showing that

"the amount of fees [awarded] is so high or so low as to shock the conscience." *White v. Lima Auto Mall, Inc.*, 3d Dist. No. 1-08-63, 2009-Ohio-411, ¶ 15.

{¶16} Local 776 concedes that the abuse of discretion standard generally applies to appellate review of attorney fee awards. However, it also argues that because the trial court based its order on Local 776's failure to meet its evidentiary burden, this appeal presents a question of law that should be reviewed *de novo*. This argument fails to account for the numerous cases in which the court of appeals has applied abuse of discretion review where the trial court entirely denied an award of attorney fees due to the failure of the requesting party to establish the reasonableness of its request. *E.g.*, *Unick v. Pro-Cision, Inc.*, 7th Dist. No. 09MA171, 2011-Ohio-1342, ¶ 26. Based on this case law, we reject Local 776's contention that *de novo* review applies to this matter.

*The American Rule and R.C. 4115.16(D)*

{¶17} Ohio follows the American Rule, which requires that each party bear its own attorney fees and costs during the course of litigation. *Sorin v. Bd. of Edn. of Warrensville Hts. School Dist.*, 46 Ohio St.2d 177, 179 (1976). However, there are a number of exceptions to this general rule. Specifically, "attorney fees may be awarded when a statute * * * provides for the losing party to pay the prevailing party's attorney fees." *Wilborn v. Bank One Corp.*, 121 Ohio St.3d 546, 2009-Ohio-306, ¶ 7.

{¶18} Since this is a prevailing wage matter, the dictates of R.C. 4115.16(D) apply. The statute provides that when a trial court finds that a party violated the prevailing wage law, it "*shall* award attorney fees and court costs to the prevailing party." (Emphasis added.) R.C. 4115.16(D). Due to the statute's plain language, we have interpreted R.C. 4115.16(D) as requiring that trial courts award attorney fees and court costs whenever they find violations of the prevailing wage law. *Jack's I*, 2011-Ohio-167, at ¶ 22; *Internatl. Bhd. of Elec. Workers, Local Union No. 8 v. Stollsteimer Elec., Inc.*, 3d Dist. No. 4-05-29, 2005-Ohio-6866, ¶ 3; *see also Internatl. Bhd. of Elec. Workers, Local Union No. 8 v. Stollsteimer Elec., Inc.*, 168 Ohio App.3d 238, 2006-Ohio-3865, ¶ 16 (6th Dist.) (agreeing with our reading of R.C. 4115.16(D)). As a result, by virtue of the trial court's grant of summary judgment, Local 776 is entitled to an award of attorney fees and court costs in this matter.

Bittner *Framework for the Reasonableness of Attorney Fee Awards*

{¶19} When an exception to the American Rule allows for an award of attorney fees, trial courts are generally instructed to follow the two-part test enunciated in *Bittner*. Although *Bittner* was handed down in the context of the Ohio Consumer Sales Practices Act, courts have applied it to fee awards in a variety of other contexts, *e.g.*, *Jefferson v. Creveling*, 9th Dist. No. 24206, 2009-Ohio-1214, ¶ 33 (applying *Bittner* to request for attorney fees under R.C. 2323.51

for bad faith conduct during litigation), including in prevailing wage enforcement actions, *e.g.*, *Village of W. Unity ex rel. Beltz v. Merillat*, 169 Ohio App.3d 71, 2006-Ohio-5105, ¶ 11-23 (6th Dist.). As such, we likewise apply its guidance here.

{¶20} Under *Bittner*, "[t]he trial court should first calculate the number of hours reasonably expended on the cases [and multiply it] by an hourly fee * * *." *Bittner*, 58 Ohio St.3d at 145. The product of this calculation is called the "lodestar" figure. *Unick*, 2011-Ohio-1342, at ¶ 27. To satisfactorily prove the lodestar, the requesting party must show that the hours billed are "necessary to the action and [do] not include 'hours that are excessive [or] redundant.'" *Id*. at ¶ 28, quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434, 103 S.Ct. 1903 (1983); *Jacobs v. Holston*, 70 Ohio App.2d 55, 60 (6th Dist. 1980) (stating that to establish reasonableness of attorney fee request, the lawyer must establish the reasonableness of the hourly rate and the amount of time expended on the case). The requesting party must also establish the reasonableness of the hourly rate. In doing so, the requesting party must "'produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Unick* at ¶ 27, quoting *Blum v. Stenson*, 465 U.S. 886, 895-96, 104 S.Ct. 1541 (1989); *see also Southeast Land*

Case No. 6-12-06

*Dev., Ltd. v. Primrose Mgt. L.L.C.*, 193 Ohio App.3d 465, 2011-Ohio-2341, ¶ 15 (3d Dist.) (outlining same requirements in determining the lodestar figure).

{¶21} Once the lodestar is determined, the trial court should consider modifying it based on the factors listed in the Ohio Rules of Professional Conduct regarding the reasonableness of the fee. *Bittner*, 58 Ohio St.3d at 145.[2] Rule 1.5(a) lists the following factors as relevant to determining the reasonableness of an attorney fee award:

> (1) [T]he time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) [T]he likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) [T]he fee customarily charged in the locality for similar legal services;
>
> (4) [T]he amount involved and the results obtained;
>
> (5) [T]he time limitations imposed by the client and by the circumstances;
>
> (6) [T]he nature and length of the professional relationship with the client;

---

[2] The Ohio Rules of Professional Conduct became effective on February 1, 2007 and superseded the Ohio Code of Professional Responsibility. Since *Bittner* was decided in 1991, the court cited the factors listed in DR 2-106(B) as those trial courts should consider in awarding attorney fees. Since this matter implicates attorney fees incurred after February 1, 2007, we consider the factors included in the Rules of Professional Conduct as controlling our review. *See O'Neill v. Tanoukhi*, 7th Dist. No. 10-MA-45, 2011-Ohio-2626, ¶ 12 (applying factors in Prof.Cond.R. 1.5 to *Bittner* analysis since matter post-dated the effective date of the Rules of Professional Conduct). Regardless, we note that the factors in DR 2-106(B) are substantially similar to the factors in Prof.Cond.R. 1.5(a).

-11-

(7) [T]he experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) [W]hether the fee is fixed of contingent.

*Burden of Proof under* Bittner

**{¶22}** We can find no case that specifically requires the prevailing party in a prevailing wage enforcement action to prove the reasonableness of its attorney fee request. But, under the *Bittner* framework, courts have generally required the requesting party to prove the reasonableness of its request. *E.g.*, *Southeast Land Dev., Ltd.*, 193 Ohio App.3d 465, 2011-Ohio-2341, at ¶ 15, quoting *Unick*, 2011-Ohio-1342, at ¶ 27. Further, other courts that have addressed matters implicating a statutorily-mandated attorney fee award have placed the burden of proof regarding the attorney fee request upon the requesting party. *E.g.*, *TCF Natl. Bank v. Smith*, 5th Dist. No. 2009 CA 00101, 2010-Ohio-1336, ¶ 21-22 (requiring prevailing party to prove reasonableness of its fee request when seeking attorney fees under R.C. 5721.39); *In re Estate of Szczotka*, 11th Dist. No. 2005-L-042, 2006-Ohio-1449, ¶ 29 (requiring defender of will in will contest to prove reasonableness of its fee request when seeking attorney fees under R.C. 2107.75). We apply the persuasive guidance of these cases here and find that R.C. 4115.16(D) does not vary the general requirement under *Bittner* that requesting parties prove the reasonableness of their fees. Accordingly, our review of the record here focuses

on whether Local 776 has carried its burden to establish the reasonableness of its fee request.

*Local 776's Evidence for its Attorney Fee Request*

{¶23} Local 776 presented three exhibits and offered D'Angelo's testimony on cross-examination by Jack's counsel in its attempt to carry its burden under *Bittner*. Since this evidence is insufficient to establish that the number of hours billed by D'Angelo was reasonable, we find that Local 776 has not carried its burden to establish the reasonableness of its fee request.

{¶24} Courts have recognized that merely submitting an attorney's itemized bill is insufficient to establish the reasonableness of the amount of work billed. *Whitaker v. Kear*, 123 Ohio App.3d 413, 424 (4th Dist. 1997); *Climaco, Seminatore, Delligatti & Hollenbaugh v. Carter*, 100 Ohio App.3d 313, 324 (10th Dist. 1995). Often, parties offer expert testimony to establish that the hours charged was reasonable in light of the litigation's particular facts. *E.g.*, *Hawkins v. Miller*, 11th Dist. No. 2011-L-036, 2011-Ohio-6005, ¶ 28 (affirming award of attorney fees where expert testified to the amount of time and hourly rate charged); *Whitaker* at 424-25 (affirming trial court's finding that evidence was sufficient to prove reasonableness of fee request where expert testified to the reasonableness of the time spent on the litigation). Meanwhile, in some matters, the requesting party refrains from offering expert testimony but instead offers

testimony from other individuals to corroborate the attorney's self-serving testimony that the fee request is reasonable. *E.g.*, *Koblenz & Koblenz v. Summers*, 8th Dist. No. 94806, 2011-Ohio-1064, ¶ 14 (affirming award of attorney fees in collection action where both an attorney with the plaintiff law firm and a third party attorney testified to the nature of the proceedings giving rise to the collection action); *Schottenstein, Zox & Dunn Co., L.P.A. v. Reineke*, 9th Dist. No. 10CA0138-M, 2011-Ohio-6201, ¶ 26-28 (affirming award of attorney fees in collection action where both an attorney with the plaintiff-law firm and the defendant-client testified the nature of the proceedings giving rise to the collection action).

{¶25} Here, Local 776 offered the Bill and D'Angelo's testimony to show that the amount of hours charged was reasonable. The Bill itself cannot show that the amount of hours charged was reasonable since there is no indication in the Bill itself that the work performed was necessary. As a result, D'Angelo's testimony could serve as the only possible basis for establishing the necessity and reasonableness of the hours charged in the Bill.

{¶26} In considering D'Angelo's testimony, we preliminarily note that D'Angelo made his statement that the bill was reasonable for the amount of time he spent on behalf of Local 776 before the trial court placed him under oath. It is well-settled that a trial court may only receive testimony after a witness is placed

under oath, R.C. 2317.30; Evid.R. 603, and the failure to place a witness under oath precludes the consideration of a witness's statement as evidence, *Arcaro Bros. Builders, Inc. v. Zoning Bd. of Appeals, City of N. College Hill*, 7 Ohio St.2d 32, 33 (1966). As a result, D'Angelo's statement about the reasonableness of the Bill was non-testimonial, and we only consider D'Angelo's statements after he was placed under oath as evidence in support of Local 776's attorney fee request.

{¶27} D'Angelo did testify that he removed duplicative entries from the Bill before offering it into evidence. But this self-serving testimony does not, by itself, prove that the amount of hours billed was reasonable and necessary for the prosecution of the action. It merely proves that the time removed before the Bill's introduction was unreasonable. Further, a review of D'Angelo's testimony reveals that he offered no statements describing the complexity of the issues involved in this matter, the ultimate goals of Local 776, and the adversarial nature of the proceedings.[3] *Compare Reineke*, 2011-Ohio-6201, at ¶ 26 (affirming award of attorney fees in collection suit where the requesting attorney testified "at length" regarding the complexity of the case, the aims of his client, and the adversarial nature of the action).

{¶28} Absent expert testimony regarding the reasonableness of Local 776's fee request or in-depth testimony from either D'Angelo or another witness

---

[3] D'Angelo's testimony also suffers from other deficiencies. Most notably, he conceded that several of the time entries in the Bill are for work on pleadings that were never filed.

-15-

regarding the nature of this matter, the trial court would have to speculate as to the reasonable amount of time necessary for the successful prosecution of this matter. Such rank speculation is contrary to the guidance of *Bittner* and its progeny and the trial court appropriately declined from engaging in it. Further, without the necessary evidence to show the reasonableness of the amount of time charged in the Bill, the trial court was unable to properly calculate the lodestar figure. Consequently, we find that the trial court did not abuse its discretion in finding that Local 776's evidence did not satisfy its burden under *Bittner* to prove the reasonableness of its fee request.

{¶29} We also note that Local 776's evidence regarding the hourly rate charged by D'Angelo and his law firm has three significant deficiencies. First, when offering the OSBA publications, D'Angelo did not indicate which statistics in the publications were relevant to the reasonableness of the hourly rates. As a result, the trial court was left with no guidance from Local 776 as to how the statistics in the voluminous OSBA publications applied to the hourly rates charged by D'Angelo. Second, D'Angelo's testimony obfuscated the proper statistic to consider. For instance, he testified that his law firm was "full-service" but also that he handled many union matters. Based on this conflicting testimony, it is questionable whether the trial court should have compared the hourly rates in the Bill to the typical hourly rates charged by general practice firms or the typical

hourly rates charged by labor law firms.[4]  Third, Local 776 failed to offer any evidence of D'Angelo's reputation, experience, and ability, which is fatal to its ability to prove the reasonableness of the hourly rates charged in the Bill.[5]  *City of Canton v. Irwin*, 5th Dist. No. 2011CA00029, 2012-Ohio-344, ¶ 22 (reversing trial court's awarding of attorney fees on basis of $250 hourly rate where the requesting party offered no evidence of the attorney's reputation, experience, and ability).

{¶30} Local 776 cites to *Merillat* in support of its contention that the Bill and the OSBA surveys are sufficient to carry its burden under *Bittner*.  However, a review of *Merillat* reveals that it is inapposite to this matter.  There, the requesting party appealed the trial court's award of attorney fees because it argued that the award was too low.  The court of appeals reversed the award for the following reasons: (1) the trial court failed to account for fees incurred by law clerks/paralegals; (2) the trial court arbitrarily reduced the hourly rate and total fee award due to the billing practices of the non-requesting party's attorney; and (3) the trial court failed to award fees incurred during the preparation of the fee request.  *Merillat*, 2011-Ohio-6201, at ¶ 27-38.  The court of appeals gave no

---

[4] There are other portions of D'Angelo's testimony that confuse the analysis of the hourly rates' reasonableness.  He testified that his law firm has five attorneys and is located in Toledo.  It is questionable based on this testimony whether the trial court should have considered the typical rates for law firms of the same size, or whether it should have considered the typical rates for Toledo law firms or Northwestern Ohio law firms.

[5] In his closing argument on behalf of Local 776, D'Angelo stated that he had 16 years of experience.  However, this statement was not made while D'Angelo was under oath, which, as noted above, precludes it from being considered as evidence.

explicit or implicit indication that the requesting party's bill and an OSBA survey were sufficient to support its request. Consequently, none of the issues presented in *Merillat* are under consideration here and the court of appeals' decision there has no bearing on our analysis.

{¶31} Local 776 also argues that since trial court judges are lawyers, they are able to assess the reasonableness of fee requests without any corroborating evidence, besides bills and OSBA surveys, directing them. Although trial court judges may have experience and knowledge regarding the setting of fees, they "must base the fee determination upon evidence adduced and cannot substitute [their] own knowledge for evidence." *In re Wood's Estate*, 55 Ohio App.2d 67, 75 (10th Dist. 1977). Accordingly, we reject Local 776's suggestion that trial court judges are able to determine reasonable attorney fees without the necessary evidence.

{¶32} In sum, the trial court did not abuse its discretion in finding that Local 776 failed to present sufficient evidence to establish the reasonableness of its fee request.

*Consequences for Failure to Satisfy* Bittner

{¶33} We now turn to determining the appropriate consequence for Local 776's failure to carry its burden under *Bittner*. We can find no case explicitly indicating the consequences that result from a party's failure to prove the

reasonableness of its request for statutorily-mandated attorney fees. As such, we must resort to analysis by analogy to guide our review.

**{¶34}** The most analogous cases that we have found implicate contractual provisions that mandate the awarding of attorney fees to a prevailing party in breach of contract claims. For instance, in *Unick*, the parties entered into a contract that included the following provision: "[i]n the event of a default * * *, the defaulting party *shall* reimburse the nondefaulting party * * * for all costs and expenses reasonably incurred by the nondefaulting party * * * in connection with the default, including without limitation attorney's fees." (Emphasis added.) *Unick*, 2011-Ohio-1342, at ¶ 6. The trial court entirely denied the attorney fee award even though the contract required such an award because the requesting party failed to carry its burden under *Bittner*. *Id*. at ¶ 21. The court of appeals affirmed the denial and found that "when a prevailing party does not present sufficient evidence to support a request for attorney's fees, the trial court has the discretion to deny the request in its entirety." *Id*. at ¶ 33; *see also Southeast Land Dev., Ltd.*, 193 Ohio App.3d 465, 2011-Ohio-2341, at ¶ 15 ("If all elements of the required proof are not provided, the trial court may deny the request for attorney fees in its entirety."); *Stonehenge Land Co. v. Beazer Homes Invests., L.L.C.*, 177 Ohio App.3d 7, 2008-Ohio-148, ¶ 47 (10th Dist.) (affirming denial of attorney fees where requesting party did not carry burden under *Bittner* even though the contract

entitled the requesting party to an attorney fee award). In light of this case law, we find that the mandatory nature of attorney fee awards under R.C. 4115.16(D) does not preclude a trial court from denying attorney fees altogether where the requesting party fails to provide sufficient evidence to establish the reasonableness of its request. Without the discretion to entirely deny attorney fees, trial courts would be required to engage in rank speculation and hand down awards that are unsupported by the evidence, which is plainly a result that is not contemplated by R.C. 4115.16(D).

{¶35} We acknowledge that an outright denial of attorney fees seems inconsistent with R.C. 4115.16(D)'s compulsory language. But, other cases involving statutorily-mandated fee awards have implicitly recognized that trial courts are empowered to deny all attorney fees if the requesting party fails to carry its burden. In *Szczotka*, the court of appeals addressed the awarding of statutorily-mandated attorney fees under R.C. 2107.75. There, the court reversed the trial court's denial of attorney fees, but only because it failed to enumerate its reasoning for the denial. *Szczotka*, 2006-Ohio-1449, at ¶ 31. It further remanded the matter so that the trial court could provide its basis for the denial. This disposition indicates that an outright denial of statutorily-mandated attorney fees is appropriate provided that the trial court provides its reasoning and that its reasoning is compliant with *Bittner*.

**{¶36}** Based on the foregoing, the trial court in this matter was empowered to entirely deny Local 776's awarding of attorney fees provided that Local 776 failed to carry its burden under *Bittner*. Consequently, the trial court did not abuse its discretion in doing so.

*Court Costs*

**{¶37}** R.C. 4115.16(D) also mandates that a non-prevailing party reimburse the prevailing party for the court costs it incurred in prosecuting the action. Unlike requests for attorney fees, there is no burden on the prevailing party to prove the reasonableness of its court cost request. Here, the trial court did not order that Jack's pay the court costs incurred by Local 776. This failure contravenes the requirements of R.C. 4115.16(D) and constitutes reversible error. Accordingly, we reverse the trial court's order insofar as it fails to award court costs to Local 776.

**{¶38}** In sum, Local 776 had the burden of proving the reasonableness of its attorney fee request and it failed to prove that the amount of hours charged by its attorney were reasonable to the prosecution of this action. As a result, the trial court did not abuse its discretion in finding that Local 776 failed to carry its burden under *Bittner* and it appropriately exercised its discretion in denying Local 776's fee request in its entirety. However, the trial court did err in failing to award court costs to Local 776.

{¶39} Accordingly, we overrule in part and sustain in part Local 776's sole assignment of error.

{¶40} Having found error prejudicial to Local 776, in the particulars assigned and argued in part in its sole assignment of error, we affirm in part and reverse in part the judgment of the trial court, and remand for further proceedings consistent with this opinion.

*Judgment Affirmed in Part,*
*Reversed in Part and,*
*Cause Remanded*

**PRESTON, P.J. and WILLAMOWSKI, J., concur.**

**/jlr**