[Cite as *Ritzler v. Arcadia*, 2020-Ohio-4416.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HANCOCK COUNTY

ROBERT A. RITZLER, ET AL.,

    PLAINTIFFS-APPELLANTS,            CASE NO. 5-20-16

    v.

VILLAGE OF ARCADIA,                 O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Hancock County Common Pleas Court
Trial Court No. 2017 CV 00463

**Judgment Affirmed**

**Date of Decision: September 14, 2020**

APPEARANCES:

    *John T. Barga* **for Appellants**

    *John C. Filkins* **for Appellee**

**SHAW, P.J.**

{¶1} Plaintiffs-appellants, Robert Ritzler and Charity Ritzler ("the Ritzlers"), bring this appeal from the February 18, 2020 judgment of the Hancock County Common Pleas Court denying their request that defendant-appellee, Village of Arcadia ("Arcadia"), pay the Ritzlers' attorney's fees pursuant to R.C. 2323.51 and Civ.R. 11. On appeal, the Ritzlers argue that they had proven Arcadia had engaged in frivolous conduct in this matter and that the Ritzlers had sufficiently established their attorney's fees.

*Background*

{¶2} After repeatedly receiving high water bills, the Ritzlers began to suspect they were being overcharged for water by Arcadia. The Ritzlers compared their water bills and their water usage to neighbors and similarly-sized families in the area and they felt that their bills were significantly higher. They contacted Arcadia and Arcadia came out to check for leaks on the premises but none were discovered. Arcadia then analyzed the water meter, and after testing it was discovered that the meter was reading at approximately 2.35 times higher than the actual amount used by the Ritzlers.

{¶3} On December 17, 2018, the Ritzlers filed a complaint against Arcadia alleging that Arcadia had breached its contractual obligation to provide water at the usual, customary, and reasonable rate. The Ritzlers alleged that they had been

paying their water bills and that Arcadia had overcharged them for water in the amount of $6,488.97 plus interest. The Ritzlers claimed that they had been overcharged on their monthly bills from 2010 to when the meter was replaced by Arcadia in 2018. The Ritzlers also requested costs and attorney's fees.

{¶4} On January 18, 2019, Arcadia filed a "Special and Limited Appearance" to present a motion to dismiss based on sovereign immunity. The Ritzlers opposed the motion, emphasizing that there was a clear exception to sovereign immunity for breach of contract claims. *See* R.C. 2744.09(A) ("This chapter does not apply to * * * [c]ivil actions that seek to recover damages from a political subdivision or any of its employees for contractual liability[.]"). The trial court denied Arcadia's motion to dismiss, reasoning that "there exists factual disputes, which preclude the Court's consideration of the motion to dismiss. [Arcadia]'s own motion suggests the possibility of an exception to sovereign immunity protection." (Doc. No. 19). The trial court added that the matter should be converted to a motion for summary judgment, and directed the parties to file their respective motions.

{¶5} On March 25, 2019, Arcadia filed a motion for summary judgment again asserting sovereign immunity, claiming that despite the styling and wording of the claim, the Ritzlers were actually asserting a tort claim, not a breach of contract claim. In the motion, Arcadia acknowledged that the Ritzlers' water meter was not

reading correctly; however, Arcadia argued that it was impossible to discern exactly when the water meter stopped reading correctly.

{¶6} On April 4, 2019, the Ritzlers filed their own motion for summary judgment and a response to Arcadia's motion for summary judgment. The Ritzlers argued that Arcadia had admitted that the meter was not reading correctly, thus it had been established that they were being overcharged. The Ritzlers again emphasized that sovereign immunity was not proper in a breach of contract claim. They attached evidence and affidavits supporting their claim.

{¶7} On April 18, 2019, the trial court filed its decision on the parties' summary judgment motions. The trial court granted the Ritzlers' motion for summary judgment, in part, finding that sovereign immunity protection did not cover a breach of contract action. The trial court also determined that Arcadia had acknowledged that the Ritzlers' water meter was not reading correctly. However, the trial court determined that two issues of fact remained to be litigated: 1) when the Ritzlers' water meter began malfunctioning; and 2) what the appropriate amount of damages were for the over-billing.

{¶8} The issues of fact were set for trial, but shortly before the trial commenced the parties settled the matter with Arcadia paying the amount requested by the Ritzlers in their complaint. Subsequently, on July 24, 2019, the Ritzlers filed a Civil Rule 41(A)(1)(a) notice of dismissal of their case.

**{¶9}** On August 22, 2019, the Ritzlers filed a motion for attorney's fees and sanctions pursuant to R.C. 2323.51 and Civ.R. 11. The Ritzlers alleged that Arcadia and its attorney had engaged in frivolous conduct in this action by filing motions that were not supported by the law or the facts.

**{¶10}** The matter proceeded to a hearing on October 31, 2019. At the inception of the hearing the trial court stated that based upon its research it believed the Ritzlers still had standing to request attorney's fees for frivolous conduct and sanctions even though the underlying action had been dismissed. The trial court then addressed some of the potential evidence and testimony that was going to be presented. The Ritzlers' attorney stated that he intended to introduce the affidavit of another attorney who was not involved in this case into evidence without offering the attorney's testimony. The affidavit would claim that the hourly fee rate of $250 charged in this matter by the Ritzlers' attorney was reasonable. The trial court inquired as to why the attorney would not be present at the hearing to testify and be subject to cross-examination, and the Ritzlers' attorney responded that it was a matter of timing and expense. The trial court refused to admit the affidavit as hearsay, reasoning that the rules of evidence still applied at the hearing.

**{¶11}** The hearing then commenced with the Ritzlers' attorney calling Arcadia's attorney to testify. Arcadia's attorney testified that he charged $175 per

hour and that in the Hancock County area he had seen a range of fees between $150-200 per hour. He acknowledged that he had seen higher rates elsewhere though.

{¶12} Arcadia's attorney also testified that he prepared the motions in this case, including those based on sovereign immunity. Arcadia's attorney testified that prior to the trial court's ruling on the matter he did not believe that there was a contract that had been breached by Arcadia because Arcadia had not overtly done something wrong. In addition, Arcadia's attorney testified that at the time he filed the motions based on sovereign immunity he believed that any existing "contract" for water was between Arcadia and the water supply entity, not between Arcadia and the Ritzlers.

{¶13} The Ritzlers each testified individually at the hearing, stating that they had issues for years with the water prices, that Arcadia had done multiple dye tests to check for leaks, and that the water meter was ultimately replaced. Robert Ritzler testified that he did the calculations to determine how much he thought Arcadia owed for overpayments. He testified that he assumed in his calculations that the water meter had been reading incorrectly since April 21, 2010.

{¶14} The administrator for Arcadia also testified at the hearing. He indicated that he was satisfied in April of 2018 that the Ritzlers' meter was not reading correctly and that they were being overcharged for water. However, he testified that he was uncertain as to when the meter began malfunctioning. The

administrator testified that the meter could have gone bad slowly and that the Ritzlers went from having no children in the house to having multiple children in the house, increasing water usage. The administrator testified that based on his inspection he could not determine when the meter started reading incorrectly.

{¶15} The Ritzlers' attorney also testified regarding his fees and his bills in this matter. A copy of his "bill" was also introduced into evidence. Arcadia's attorney challenged the Ritzlers' attorney on the fact that some of the attorney's fees clearly predated the filing of the breach of contract action. Arcadia's attorney also pointed out that it was not possible to discern from the bills what work had been done in relation to supposed frivolous conduct. The parties submitted written closing arguments and the matter was submitted to the trial court for determination.

{¶16} On February 18, 2020, the trial court filed its entry analyzing the attorney's fees and sanctions issues. The trial court reasoned as follows.

> **[The Ritzlers] first argue, as a contract dispute, [Arcadia] had no basis in law to defend this action based on sovereign immunity. [The Ritzlers] contend that a simple reading of the sovereign immunity statutes would have revealed this. On this point, the Court agrees. (See Exhibit 93; R.C. § 2744.09). However, other aspects of the Village's defense were not frivolous. Whether privity existed between the parties was, at the initial stages of this litigation, a worthy question. Questioning the amount of reimbursement sought by [the Ritzlers] was also a fair point because questions existed about when the malfunction began and the Village was permitted to access the property to replace it.**
>
> **Another important issue to examine is the timing of the settlement. Even after the Village learned that the water meter**

> **had been malfunctioning, its failure to resolve the dispute well prior to trial was never explained. (See Exhibit 1). Based upon information known to the Village as far back as March of 2019 (and likely much earlier), this matter could have been settled without the necessity of protracted legal proceedings. For these reasons, there is compelling evidence to find that the Village and its counsel unnecessarily delayed resolution of this case.**
>
> **However, this finding does not apply to the Plaintiffs' Rule 11 claim. There is insufficient evidence to establish that Filkins and the Village acted willfully or intentionally. * * * Having found the existence of some frivolous conduct, Plaintiffs may be entitled to attorney's fees.**

(Doc. No. 56).

{¶17} The trial court then analyzed the Ritzlers' claims for attorney's fees, noting that the preferred method to establish an award of attorney's fees is to offer disinterested opinions on the reasonableness of the hours spent and the reasonableness of the hourly rate. The trial court stated that the Ritzlers did not secure the appearance of an expert, rather, the Ritzlers' counsel submitted his own affidavit suggesting the reasonableness of his hourly rate and the time spent on the matter. The trial court also noted that the testimony and the bills from the Ritzlers' attorney did not "delineate those portions of his fees dealing with the various disputed issues." (*Id.*)

{¶18} Ultimately, the trial court found two "serious" problems existed with regard to the Ritzlers' claim for attorney's fees, the first being that there was no expert testimony that the time spent on this case was reasonable. The trial court

stated that, "An opinion from counsel that his own services were reasonable cannot be considered totally objective. The benefit of having another learned set of eyes and ears review the file would have provided the Court with the opportunity to objectively evaluate the request, especially given that it was a matter in contention." (Doc. No. 56).

{¶19} The second major issue was that the trial court found that only *some* of Arcadia's conduct was frivolous and the time spent responding specifically to "frivolous" matters was not self-evident from the billing statements. "It is impossible for the Court to separate the work done to defend against the frivolous action of the Village versus efforts expended to assert legitimate defenses." (*Id*.) Thus the trial court reasoned that without the necessary information, it could not award attorney's fees in this case. It is from this judgment that the Ritzlers appeal, asserting the following assignment of error for our review.

**Assignment of Error**
**The trial court committed reversible error when it failed to acknowledge, accept and use the facts produced during the October 31, 2019 hearing, the documents in the record and the appropriate legal standard that support an award of attorney fees to plaintiffs.**

{¶20} The Ritzlers make various claims in their assignment of error contending that the trial court erred by denying their request for attorney's fees in this matter. They argue, *inter alia*, that the trial court incorrectly stated that expert testimony was necessary to establish that the hours spent on this case were

reasonable, and that there was sufficient evidence to support their motion for attorney's fees.

Standard of Review

{¶21} Generally, we review a trial court's decision regarding an award of attorneys' fees for an abuse of discretion. *United Assn. of Journeyman and Apprentices of the Plumbing and Pipe Fitting Industry v. Jack's Heating, Air Condition & Plumbing, Inc.,* 3d Dist. No. 6–12–06, 2013–Ohio–144, ¶ 15, citing *Bittner v. Tri–Cty. Toyota, Inc.,* 58 Ohio St.3d 143, 146, 569 N.E.2d 464 (1991). An abuse of discretion suggests the trial court's decision is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

*Discussion*

{¶22} The Ritzlers argue that they are entitled to attorney's fees and sanctions pursuant to R.C. 2323.51 and Civ.R. 11. The party requesting the attorney's fees has the burden of providing evidence that the hours worked were necessary to the action and that the amount of the fees is reasonable. *Southeast Land Dev., Ltd. v. Primrose Mgt., L.L.C.,* 3d Dist. Hancock Nos. 5–10–04, 5–10–11, 2011–Ohio–2341, ¶ 15.

{¶23} In this case, the trial court determined that there was *some* frivolous conduct committed by Arcadia and its attorney. Arcadia did not file a cross-appeal challenging this issue so we will accept the trial court's finding on this matter.

{¶24} Nevertheless, the trial court determined that it could not award attorney's fees here because no evidence was presented that the hours spent on this case were reasonable beyond the self-serving affidavit of the Ritzlers' attorney and because there was no differentiation through testimony or exhibits between work that was spent responding to frivolous conduct and work that was spent responding to legitimate factual or legal issues. In other words, the trial court found that the Ritzlers did not adequately establish the amount of attorney's fees that they were actually entitled to receive for responding to frivolous matters.

{¶25} The Ritzlers challenge the trial court's determination on appeal, arguing that expert testimony is not actually required to establish attorney's fees. However, this argument misconstrues the trial court's reasoning, which was that absent evidence from a disinterested attorney, the trial court was left with the Ritzlers' attorney's own statement that his fees and hourly rate were reasonable. The trial court simply did not find that affidavit sufficient to objectively establish the matter in this particular set of circumstances. Under other circumstances with self-serving testimony we have found that a request for attorney's fees was not properly established. *See United Assn. of Journeymen & Apprentices of the*

*Plumbing & Pipe Fitting Industry v. Jack's Heating, Air Conditioning & Plumbing, Inc.*, 3rd Dist. Hardin No. 6-12-06, 2013-Ohio-144, ¶¶ 23-32. Nevertheless, we have also stated that "we have not gone so far as to hold that [disinterested/expert] testimony is a threshold requirement [to establish attorney's fees] in all circumstances." *Grove v. Gamma Ctr., Inc*, 3d Dist. Marion No. 9-12-41, 2013-Ohio-1734, ¶ 31, citing *Natl. City Bank v. Semco, Inc.*, 3d Dist. Marion No. 9-10-42, 2011-Ohio-172, and *Jack's Heating*, *supra*. Regardless, the trial court here simply found that the Ritzlers did not meet their burden in this matter.

{¶26} Notwithstanding this point, the trial court found a *second* deficiency with the Ritzlers' request for attorney's fees. The trial court found that it was unable to determine from the bills and testimony presented what work had been conducted on frivolous conduct versus what work had been spent on legitimate defenses by Arcadia.

{¶27} The total billing appears to request $13,006.15 for work completed prior to the hearing on the attorney's fees motion, and an additional $2,500 for preparation and attendance at the hearing on sanctions/frivolous conduct. As an illustration of how it is difficult to discern the attribution of work contained in the bill, one page of the bill submitted contains such lines as "1/22/2019 Review Motion/ legal research" and "2/4/2019 Work on Brief." However, no amount of time is listed next to these tasks. Rather, at the bottom of fifteen listed tasks over

the course of nearly a month is a summary that 12.2 hours had been worked totaling a fee of $3,050 (not including costs and expenses). There is no breakdown whatsoever as to how much time was spent on each task on a given day. Based on the dates, this would seem to be around the time that the Ritzlers' attorney would have been dealing with the motion to dismiss. There is a slightly more detailed billing statement beginning February 27, 2019, that shows the hours spent on individual tasks on individual dates, but some of the "descriptions" are still vague.

{¶28} Moreover, as was stressed during cross-examination, there was even a fair amount of work in the bills that was performed by the Ritzlers' attorney *before* the lawsuit was even filed. Based on these issues, we cannot find that the trial court abused its discretion in determining that the Ritzlers' evidence did not establish the amount of time specifically spent in dealing with the "frivolous conduct." *See Weaver v. Pillar*, 5th Dist. Tuscarawas No. 2012-CA-32, 2013-Ohio-1052, ¶ 40 ("We find the record lacks evidence that Pillar was adversely affected by having to defend allegedly frivolous claims, as distinguished from the need to defend the lawsuit in general[.]")

{¶29} In sum, the trial court found that there was *some* frivolous conduct here, but it explicitly did not find willful or intentional misconduct that would satisfy Civ.R. 11 sanctions. The trial court also did not find that the overwhelming nature of the defense presented by Arcadia was dedicated to frivolous matters. This is

-13-

important because when the trial court analyzed the attorney's fees requested, the Ritzlers did not present a detailed billing. Similarly, the Ritzlers did not supply any disinterested testimony, which the trial court felt, *in this particular case*, would have been necessary to help the Ritzlers' establish their fees. Under the facts and circumstances of this case we cannot find that the trial court abused its discretion by denying the Ritzlers' motion for attorney's fees. Therefore their assignment of error is overruled.

*Conclusion*

{¶30} For the foregoing reasons the Ritzlers' assignment of error is overruled and the judgment of the Hancock County Common Pleas Court is affirmed.

***Judgment Affirmed***

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**